**WALPOLE WOODWORKERS, INC.**

v.

**ATLAS FENCING, INC. and Atlas Outdoors, LLC**

**No. 3:02CV581 (JBA).**

United States District Court, D. Connecticut.

July 11, 2002.

Corp., 285 F.3d 623, 626–27 (7th Cir.2002), *vacated,* 294 F.3d 879 (7th Cir.2002).

Everett E. Newton, Seth M. Wilson, Murtha Cullina LLP, Hartford, CT, Roland Schwillinski, Brenda R. Sharton, Sean P. Cronin, Boston, MA, for Plaintiff.

Bryan L. LeClerc, Richard J. Buturala, Robert L. Berchem, Warren L. Holcomb, Berchem, Mosess & Devlin, P.C., Milford, CT, for Defendants.

## RULING ON PENDING MOTIONS

[## 4, 6, 24]

ARTERTON, District Judge.

Plaintiff Walpole Woodworkers, Inc. filed this suit against defendant Atlas Fencing, one of its competitors in the fence design, manufacture and installation business, alleging that Atlas Fencing has blatantly copied its copyrighted material, trademarks and trade secrets by incorporating copyrighted photographs of Walpole's products and Walpole's trademarks in Atlas's catalogs. Plaintiff's verified complaint asserts claims of copyright infringement under the Copyright Act, 17 U.S.C. § 501, trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), common law trademark infringement, trade secrets appropriation under Conn. Gen.Stat. § 35–50 et seq., and a CUTPA violation.

Currently pending are plaintiff's motions for a prejudgment attachment [# 4], disclosure of assets [# 6], and for contempt [# 24]. On May 29, 2002, the Court heard evidence on the motions for attachment and contempt.

## I. Attachment

An attachment may issue under Connecticut's prejudgment attachment statute upon a showing of "probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought ... will be rendered in favor of the plaintiff." Conn. Gen.Stat. § 52–278d. "Probable cause" for these purposes has been defined by the Connecticut courts as "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Three S. Development Co. v. Santore*, 193 Conn. 174, 175, 474 A.2d 795 (1984) (citation omitted). Thus, the plaintiff does not have to prove its case by a preponderance of the evidence, but must show that there is probable cause to sustain the validity of the claim. *New England Land Co., Ltd. v. De Markey*, 213 Conn. 612, 620, 569 A.2d 1098 (1990).

■ Walpole has met the required showing of probable cause based on the verified complaint, attachments thereto, the affidavits of James Loer and David Rackey, which demonstrate the utilization by Atlas of various photographs taken directly from Walpole's copyrighted catalogs and the use of claimed trademarked names for various products, and the testimony of Loer, Michael Picard of Atlas, and Stephen Wallack, who was hired by Atlas to develop its catalogs.

The Court also agrees with Walpole that there is probable cause to find that the infringement of the Selections catalog here was willful. Wallack and Picard testified that in developing the 2001 Accents catalog, they reviewed Walpole's 2000 Selections catalog and noted which pictures were to be utilized in Atlas' catalog. Picard made changes to the names of the products, but the photographs were identical. Notwithstanding Picard's claim that he believed that Wallack would alter the photographs at some point, he testified that he was aware that the final 2001 Accents catalog contained unaltered Walpole photographs. *See* Hearing Tr. at 103. Wallack similarly testified that when the 2001 Accents catalog was published, he and Picard were aware that it contained Walpole's pictures. *Id.* at 155. At that time, Wallack believed based on conversa-

tions with Picard that Walpole was simply another vendor or manufacturer, rather than a competitor, whose photographs could be used by Atlas in its catalogs. *Id.* at 156–57, 161. Thus, even if Picard was not specifically aware that the use of Walpole's photographs was infringement, the evidence is sufficient to support Walpole's claim that Atlas recklessly disregarded the possibility that its conduct represented infringement. *See Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 112 (2d Cir.2001) ("Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement. A plaintiff is not required to show that the defendant had knowledge that its actions constituted an infringement.") (citations and internal quotations omitted).

While the issue of probable cause is not seriously in dispute, the amount of Atlas's assets that should be attached pursuant to Conn. Gen.Stat. § 52–278(d) is hotly contested. Plaintiff claims that it is entitled to an attachment in the amount of $2.7 million, under theories of quantifying its damages, Atlas' profits, or statutory damages, taking into account the trebling of damages for willful misconduct under the Lanham Act, punitive damages under CUTPA, costs and attorneys' fees.

■ First, plaintiff argues that its Ridgefield store, located approximately fifty miles from a competing Atlas store in Southport, suffered at least $1 million in damages in 2001 as a direct result of the infringement and unfair competition. According to plaintiff, while all other Walpole locations experienced an increase in sales in 2001, the Ridgefield store alone lost profits, and Loer testified that Walpole's internal review determined that the drop in sales at Ridgefield could not be attributed to employee issues. Picard, however, testified that in the last two years, additional competitors had entered the Ridgefield market, and Walpole offered no evidence addressing the impact of those competitors on its sales. Further, in light of the uncontradicted testimony from Atlas that its Southport store claimed to be the competitor primarily responsible for the decrease in plaintiff's sales at the Ridgefield store did not open until December 2001, absent evidence specifically relating the amount of profits lost per month, the Court finds that Walpole has not provided sufficient evidence that the profits lost by the Ridgefield store can be fairly attributed to infringement by Atlas.

■ Alternatively, plaintiff seeks recovery based on Atlas' profits. Picard testified that Atlas made $605,000 from the Selections catalog in 2001. While the copied portions represent only a small portion of the Atlas Accents catalog, plaintiff maintains that defendant has not met its burden of showing those profits that were not attributable to infringement and that the entire amount is appropriately used to calculate the likely damages recovery. However, at the hearing, Picard testified that for 2001 and 2002, the aggregate sales of mailboxes and lantern posts—a significant majority of the items portrayed in the infringing photographs—by Atlas was only $13,000, with a gross profit of approximately $6,000. Hearing Tr. at 115–16. The Court therefore finds that the $605,000 claimed by plaintiff as Atlas' profits from infringement grossly exceeds the amount of probable recovery under this theory. Accordingly, at least at this stage, only $6,000 can be attributed as Atlas' gains from infringement.

■ Finally, plaintiff argues that it would be entitled to statutory damages for each act of willful infringement in an amount up to $150,000 per infringement. *See* 17 U.S.C. § 504(c)(2). The Copyright Act provides for statutory damages as follows:

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work. (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c).

Plaintiff contends that because the infringement here was particularly egregious, there is probable cause to believe that the finder of fact would award the maximum statutory damages, or $600,000 for the four claimed acts of infringement, and that this amount should be trebled. Atlas, in turn, argues that because there is only a single work infringed, the 2000 Selections catalog, the maximum award would be $150,000.

The statute clearly provides for an award of up to $150,000 for all willful infringements with respect to "any one work." *See Walt Disney Co. v. Powell,* 897 F.2d 565, 569 (D.C.Cir.1990) ("The district court erred in assessing damages based upon six 'violations,' mistakenly focusing on the number of infringements rather than on the number of works infringed. Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements.").[1] Here, there has been shown probable cause of willful infringement of only one work, the Selections catalog, and the Court concludes that only one statutory damages award would therefore be appropriate.

"The broad discretionary power given courts to make such an award serves the dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers." *National Football League v. PrimeTime 24 Joint Venture,* 131 F.Supp.2d 458, 473

---

**1.** *Twin Peaks Prods. v. Publications Int'l,* 996 F.2d 1366, 1381 (2d Cir.1993), cited by plaintiff in support of its claim for statutory damages for four acts of infringement, is not to the contrary. In that case, the Second Circuit expressly noted that the statute limits damages awarded to each work infringed, and held that eight episodes of a television drama with a continuous plot could properly be considered eight individual works. The court continued:

> We might well have a different situation if a book written as a single work was then adapted for television as a group of episodes, for example, the six-part television adaptations of John LeCarre's "Tinker, Tailor, Soldier, Spy" and "Smiley's People." Even in such circumstances, though there would be but one book infringed, there might be separate awards for infringement of each televised episode.

*Id.* Thus, the court did not hold, as plaintiff claims, that if the six-part series was claimed to have infringed a single book, six statutory damages awards would be appropriate, but rather that infringement of the six-part series itself might support multiple awards.

(S.D.N.Y.2001) (citation omitted). According to the Supreme Court, this "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952). Similarly, the Second Circuit has held that:

> [i]n determining an award of statutory damages within the applicable limits set by the Act, a court may consider " 'the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind—whether wilful, knowing, or merely innocent.' " 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[B], at 14–41 (1991) (*quoting Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 914 (D.Conn. 1980)).

*N.A.S. Import Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 252 (2d Cir. 1992).

As noted, plaintiff has set forth sufficient evidence from which a factfinder might well conclude that its infringement was willful. However, although Atlas certainly saved money in preparing its catalogs as a result of the infringement, no evidence of the amount of money saved has been offered, and the profits presently shown to possibly have resulted from the infringement are limited to approximately $6,000. As discussed above, the claimed profits lost by Walpole are merely speculative at present. In light of the evidence of willfulness, however, which has been held to be a significant factor in determining the amount of statutory damages to award, *see, e.g., National Football League,* 131 F.Supp.2d at 474, and taking into account the need to deter future similar violations and the difficulty in quantifying plaintiff's

lost profits, including good will, the Court concludes that even with these limitations of proof, plaintiff has presently shown probable cause that statutory damages award in the amount of at least $50,000 would be issued.

In summary, while the Court recognizes that damages for copyright and trademark infringement should be broadly construed to provide protection for victims of infringement, *see On Davis v. The Gap, Inc.,* 246 F.3d 152, 165–66 (2d Cir.2001), Walpole has failed to provide sufficient evidence that there is probable cause that it will recover an amount equal or greater than $2.7 million as it claims. Instead, Walpole has shown probable cause only that it will recover an amount equal to $50,000. Accordingly, an attachment in that amount will be ordered.

## II. Contempt

■ Plaintiff also seeks contempt sanctions and attorneys' fees, claiming that defendant has violated the consent preliminary injunction by continuing to distribute catalogs containing pictures copied directly from Walpole's copyrighted catalogs and using Walpole's copyrighted materials and trademarks as part of its in-store displays.

The Order of preliminary injunction, approved by the Court April 19, 2002, enjoined Atlas from distributing, using, selling, displaying or disposing of in any manner, the following: the 2001 Atlas Accents catalog, and any catalog that uses the marks Morningstar, Pyramid, Madison or Trenton in connection with the sale of lampposts, signposts or mailbox posts; page 68 of the 2002 Atlas Accents catalog, and the portion of page 72 of the Accents catalog concerning a Wood Framed Umbrella, an Umbrella Cover and a Florentine Umbrella Base; the portion of page 83 of the Atlas Fence Company Catalog depicting a mailbox post labeled "1 Atlas

Lane," any material derived, copied or modified from Walpole's copyrighted works, that use Walpole's trademarks, or that publish any portion of Walpole's pricebook or other confidential business information. *See* Order, dated April 22, 2002 [# 18], at ¶ 1. The Order also required Atlas to "recall from its employees and stores immediately the 2001 Accents Catalogues, such 2002 Atlas Accents Catalogues that have not been modified to delete page 68 and such portions of page 72 [referred to above]; such Fence Catalogues that have not been modified to delete the [1 Atlas Lane] Mailbox; and other materials, if any, derived, copied or modified from Walpole Woodworkers' copyrighted works, or that use Walpole Woodworkers' trademarks, or that publish any portion of Walpole Woodworkers' Price Book or other confidential business information." *Id.* at ¶ 2. Finally, the Order required Atlas to return to Walpole its price book or any other confidential business information, and to provide the recalled materials described in ¶ 2 to defendant's counsel to be held pending resolution of this action. *Id.* at ¶¶ 3, 4.

In support of the contempt motion, plaintiff offered the testimony of James Loer, who visited the East Haven Atlas store on May 5, 2002, and was provided with a copy of the Atlas Fence Company Catalog containing page 83; he was also given a copy of the 2002 Atlas Accents Catalog containing page 68 and page 72. His daughter was also handed the Accents catalog, but the employee handing it to her ripped page 68 out in front of her, claiming to be "editing" the catalog. The pictures on page 72 copied from the Walpole catalog were partially covered by "easily removable stickers that read 'NO PICTURE AVAILABLE FOR THIS ITEM.'" Loer Aff. ¶ 5. On May 3, 2002, Loer visited the Old Saybrook Atlas store, and observed on display mailbox posts similar in design to Walpole's Morningstar and Pyramid mail-

posts, to which were attached "cards with photographs, product descriptions, the trademarks Morningstar and Pyramid, that were copied directly from page 51 and page 54 of the Walpole Woodworkers Selections 2000 Catalogue." Loer Aff. ¶¶ 7–9.

Plaintiff maintains that this ad hoc "editing" and the use of removable stickers fails to comply with the Order's requirement that the offending pages be removed or the catalogs given to counsel. Plaintiff also claims that merely covering the pictures of the products on page 72 does not comply with the Order because the names and descriptions remain visible. As a consequence, plaintiff requests sanctions, and an order requiring Atlas to immediately recall and impound all infringing catalogs.

In response, Atlas claims to have complied with the Order and that it has diligently and with good faith taken all steps required by the Order. According to Atlas, because page 68 was removed before the catalog was given to plaintiff's daughter, the Order was not breached; similarly, Atlas argues that as the Order does not mandate covering the text accompanying the products displayed on page 72, it was not in breach of the Order to do so. Defendant further states that it determined that page 72 should be removed from the catalog two days after the Order was issued, and that as soon as it learned of the existence of the catalog in the East Haven store—after the contempt motion was filed—it took further action: inspecting all retail facilities and issuing further directives to employees.

According to Michael Picard, President and Chief Executive Officer of Atlas Fencing, Inc., he took the following steps to ensure compliance with the Order: on April 18, the evening the agreement was reached, he contacted Rudy Sorrentino, the CFO, and Robert Dumont, the Chief

Operating Officer, and instructed them to take immediate action to ensure compliance. He ordered that no catalogs or materials be used until they had been redacted and that all Atlas Fence Company catalogs be returned to the corporate office in Branford, where page 83 was to be removed prior to the return of the catalogs to the retail locations.

On April 19, Picard directed that an email be sent to all retail locations and sales personnel, instructing them to remove from distribution and display all Atlas Accents 2002 catalogs, and he personally went to each store on April 20 to insure all such catalogs were removed and sent to counsel.[2] As of the date of the order, 10,000 copies of the 2002 Atlas Accents catalog had been distributed to the four retail locations in Connecticut. These retail locations and employees were instructed on April 19 to delete page 68 and cover the portions of page 72 encompassed within the Order. That evening, Picard, Sorrentino and Dumont decided that stickers were inadequate, and on April 22, ordered employees to remove page 72 completely. See Hearing Tr. at 119–20. Picard also went to each of the stores on April 22 and 23 to review the areas where the catalogs were distributed, and reviewed a sampling of the catalogs to ensure that the pages had been removed. Id. at 135–36. Picard explained that he did not see the in-store mailbox display at that time and that he had not authorized the display. Id. at 116–17. No explanation has been offered for why Loer received catalogs containing the pages that had allegedly been removed consistent with the Order on May 5.

After Picard learned of the contempt motion, on May 9 he directed that another email be forwarded, advising employees of the distribution and emphasizing that they should take immediate action to return any offending materials, warning that there was "no room for error." Picard states that he personally visited each retail location on May 10 and 12, and found only two boxes of unredacted catalogs in a storage closet in Southport. He also observed two display tags copied from an Atlas Accents catalog, attached to mailboxes on display in the showroom. Picard removed them and sent a corporate officer to each location to confirm that no other store was using similar display tags.

Thus, defendant argues that the breach was inadvertent and now cured, and that contempt sanctions are unwarranted. A party may be held in civil contempt for the failure to comply with an Order of the Court if (1) the order was clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not been reasonably diligent and energetic in attempting to do what was ordered. See, e.g., EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Joint Apprentice–Journeyman Educ. Fund, 925 F.2d 588, 594 (2d Cir. 1991).

There is no dispute that the stipulated Order was clear and unambiguous. Defendant argues that because Picard " 'has in good faith employed the utmost diligence in discharging his ... responsibilities' " to ensure compliance with the Order, it should not be held in contempt. Aspira of New York, Inc. v. Board of Educ. of City of New York, 423 F.Supp. 647, 654 (S.D.N.Y.1976) (quoting Natural Resources Defense Council, Inc. v. Train, 510 F.2d 692, 713 (D.C.Cir.1974)). In light of the fact that Loer and his companion received unredacted copies of the catalogs in May, the steps claimed to have been taken

---

**2.** At the hearing, Picard explained that no emails regarding the 2001 catalog were sent to the stores because he believed that Atlas had run out of that catalog months earlier. See Hearing Tr. at 134.

by Picard prior to the filing of the contempt motion do not demonstrate that Atlas acted in the utmost diligence, particularly as Picard was obviously able to take additional steps *after* the filing of the contempt motion.

█ Accordingly, Atlas is found to have been in contempt of the stipulated Order. However, as no damages have been claimed or shown to have resulted from the violation of the order, and the steps now taken by Picard in response to the filing of the contempt motion presumably will ensure that future "inadvertent" violations do not occur, the Court finds that no imposition of sanctions is appropriate at this juncture. Atlas is advised that any future use of any single copyrighted image from the Walpole catalogs in violation of the order will be subject to a fine of $2,500 per image, payable to the Clerk of the Court. *Cf. NLRB v. J.P. Stevens & Co.,* 563 F.2d 8, 16 (2d Cir.1977) ("the purpose of a motion for civil contempt ... is not to punish intentional misconduct, but rather to enforce compliance with an order of the court and to remedy any harm inflicted on one party by the other party's failure to comply").

Finally, the Second Circuit has held that whether to award attorneys fees depends in significant part on whether the misconduct was willful. *See Weitzman v. Stein,* 98 F.3d 717, 719 (2d Cir.1996) ("while willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them. Indeed, to survive review in this court, a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt") (*citing Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1535 (11th Cir.1986); *In re Federal Facilities Realty Trust,* 227 F.2d 657, 658 (7th Cir.1955)).

While plaintiff has shown that Atlas did not act with the utmost diligence, it has not shown that defendant's misconduct in failing to ensure that all offending catalog materials were taken out of circulation was willful. Accordingly, the Court finds that attorneys' fees are not warranted.

### III. Discovery of assets

█ Finally, plaintiff has moved for discovery of defendant's assets [# 6]. Atlas objects on the grounds that the Connecticut prejudgment remedy statute provides that a defendant, in lieu of disclosing assets, may move the court for substitution of a bond with surety or other sufficient security. *See* Conn. Gen.Stat. [§ ] 52–578n(d). Defendant also argues that because plaintiff's claims for punitive damages will not be calculated by reference to its overall financial status, such discovery is not likely to lead to discovery of admissible evidence at trial. However, as plaintiff notes in response, the CUTPA claim includes a claim for punitive damages, which Connecticut trial courts and district courts have held serve a deterrent function and therefore are appropriately calculated with reference to defendant's financial status. *See, e.g., Lenz v. CNA Assurance Co.,* 42 Conn.Supp. 514, 630 A.2d 1082, 1083 (1993) (Flynn, J.); *Boulevard Assoc. v. Sovereign Hotels, Inc.,* 861 F.Supp. 1132, 1139 (D.Conn.1994). Accordingly, as agreed by the parties at the hearing on contempt and attachment, the motion is granted with respect to discovery limited to defendant's net worth and such financial statements as would disclose net worth and the analysis used to determine net worth. Plaintiff may renew its motion for disclosure of assets if defendant does not elect to post bond for the award of the prejudgment attachment.

### IV. Conclusion

For the reasons set forth above, plaintiff's motion for prejudgment remedy is

GRANTED IN PART in the amount of $50,000. Plaintiff's motion for disclosure of assets [# 6] is GRANTED IN PART and DENIED IN PART. Plaintiff's motion for contempt [# 24–1] is GRANTED IN PART and DENIED IN PART. The motion for attorneys' fees [# 24–2] is DENIED.

IT IS SO ORDERED.