ORDER
Following disposition of this appeal on June 25, 2009, an active judge of the Court requested a poll on whether to rehear the case in banc. A poll having been conducted and there being no majority favoring in banc review, rehearing in banc in hereby DENIED.
With this Order is filed a per curiam opinion concurring in the denial of rehearing in banc, and Judge Raggi files an opinion dissenting from the denial of rehearing in banc in which Chief Judge Jacobs and Judges Cabranes and Livingston join.
PER CURIAM.
We concur in the decision of the court to deny rehearing m banc in this case.[1]
In a holding that applies only to the Department of the Army Conscientious Objector Review Board (DACORB), a unanimous three judge panel held that “[wjhere the DACORB does not provide an adequate statement of the reason for its *158 denial of a conscientious objector application, a district court must remand to the Army for an adequate statement of reasons unless such remand would be utterly futile, as when the record reveals there is no possible basis in fact to support the decision.” Watson v. Geren, 569 F.3d 115, 134 (2d Cir.2009). There is no justifiable reason to go en banc with respect to a case whose narrow holding applies only to the DACORB,[2] whose decisions we review once in a generation.[3] The fact that this issue arises so infrequently lends credence to our view that en banc review is not “necessary to secure or maintain uniformity of the court’s decisions.” Fed. R.App. P. 35(a)(1). We adhere to the well-established principle that “[e]n banc courts are the exception, not the rule.” United States v. American-Foreign S.S. Corp., 363 U.S. 685, 689, 80 S.Ct. 1336, 4 L.Ed.2d 1491 (1960). In any event, the panel’s decision, which recognizes that in the ordinary course, remand to the DACORB for a statement of reasons is appropriate and that we may decline to remand only in the strongest of circumstances — that is, in the rare instance in which there is no “basis in fact” to support the denial on any valid ground, such that the DACORB’s error is so fundamental and pervasive as to be uncorrectable as a matter of law — is supported in established law. Given that the panel’s decision does not seek to depart from existing standards, the issue presented by this appeal is not properly considered a “question of exceptional importance” within the meaning of Federal Rule of Appellate Procedure 35(a)(2). See also Jon O. Newman, In Banc Practice in the Second Circuit: The Virtues of Restraint, 50 Brook. L.Rev. 365, 382-83 (1984); Wilfred Feinberg, Unique Customs and Practices of the Second Circuit, 14 Hofstra L.Rev. 297, 311-12 (1986). Moreover, as the panel decision noted, the government acknowledged the correctness of this underlying standard at oral argument, and following publication of the court’s opinion relying on the government’s acknowledgment, the government did not seek panel *159 rehearing or rehearing en banc, nor did it move to stay the mandate.[4]
In this circuit’s only case directly on point, United States ex rel. Checkman v. Laird, 469 F.2d 773 (2d Cir.1972), the court made clear that the rationale behind the principle it announced, that the DACORB’s decision “must stand or fall on the basis of the reasons stated,” is that “[otherwise a court, if it sustains a decision by recourse to reasons outside those specified, opens the door to an improper substituting of the court’s judgment and evaluation of evidence in place of that of the agency (here the CORB) or official with responsibility. The court’s judgment, its reasons and approaches, may not be acceptable to and may even have been discredited by the administrative officials responsible.” 469 F.2d at 780-81 (emphasis added); see also id. at 779 n. 7 (“[WJhere no reasons are given for a denial of [conscientious objector] status, and the record before the selective service officials contains both valid and invalid grounds for the denial, the denial cannot be sustained because it is impossible to know whether the invalid rather than the valid grounds were relied upon.” (emphases added)); id. at 780 n. 10 (“[I]t is not the function of this court to search the record for some basis to affirm the Army’s decision when the reasons given therefor are inadequate.” (internal quotation marks omitted and emphasis added)); id. at 781-82 (rejecting the government’s contention that the court was not limited to determining whether there was a basis in fact to support the reasons given by the DACORB, and instead could search the record for any basis in fact to support the DACORB’s denial of the application); id. at 784 (“The CORB’s finding of insincerity was not accompanied by any reasons, as required .... That alone precludes affirmance of its decision on grounds of insincerity, on the record as it stands.” (emphasis added)).
Moreover, the rule announced by the panel in Watson is supported by the only Court of Appeals case to ever consider the question at issue here: whether remand to the DACORB for a statement of reasons is necessary where there is no basis in fact to support the decision. In United States ex rel. Coates v. Laird, the district court indicated that there was a possible basis in fact to support the DACORB’s decision, but granted the petitioner a writ of habeas corpus anyway, explaining that where the DACORB did not state its reasons, and “some of the possible though unstated grounds for the decision were invalid and some were valid, it was impossible to tell which grounds the authority actually used as a basis for the decision.” United States ex rel. Coates v. Laird, 358 F.Supp. 214, 219-20 (W.D.N.C.1973). The Fourth Circuit reversed, holding that the district court should not have summarily granted the writ. Instead, “[t]he proper procedure in such a case where the record evidences alternative grounds, one possibly valid and the other invalid, is to remand the proceedings to the service for reprocessing and for compliance with the requirement of a statement of reasons.” 494 F.2d 709, 712 (4th Cir.1974). The court explained “if there are procedural defects in the denial at the military level of an in-service [conscientious objector] application, such as failure to state the reasons for denial, remand to the military ... is the proper procedure, unless the record shows that there is no basis in fact for denial on any valid ground.” Id. (internal quotation marks omitted) (emphasis added).
*160 We fail to see how the narrow holding in this case changes existing law or alters the balance of authority between the executive and judicial branches. If anything, it reinforces the importance of the ordinary remand rule, and the court’s limited role in reviewing DACORB decisions.
We recognize that there may be differing views as to how the law should be applied to the facts in this case.[5] But if the legal standard is correct, then the full court should not occupy itself with whether the law has been correctly applied to the facts. See Landell v. Sorrell, 406 F.3d 159, 165-66 (2d Cir.2005); Gilliard v. Oswald, 557 F.2d 359, 359 (2d Cir.1977). If that were the appropriate course, then our dockets would be overloaded with en banc polls contesting a panel’s examination of particular sets of facts.
En banc review should be limited generally to only those cases that raise issues of important systemic consequences for the development of the law and the administration of justice. We respectfully suggest that this is not one of those cases.

. Senior Circuit Judges Joseph M. McLaughlin and Guido Calabresi, who were members of the original three-judge panel that heard this appeal, have authorized us to note their agreement with this opinion.

. As is clear from the relevant Army regulations, the DACORB is not a traditional agency established by Congress and empowered by Congress to make policy and to enforce laws. It does not operate pursuant to procedures akin to the Administrative Procedure Act, was not established by Congress, and has not been empowered by Congress to make any policy or to enforce any law. There is no statute that governs discharge of voluntary Army enlistees on the basis of conscientious objection. The Selective Service Statutes, 50 App. U.S.C. § 456(j), exempt conscientious objectors from induction into the service, but do not apply to voluntary enlistees like Watson. There is no mention in the Code of Federal Regulations of discharge of voluntary Army enlistees as conscientious objectors; the only relevant discussion of conscientious objectors pertains to the Selective Service System. See 32 C.F.R. § 1636 et seq. The only mention of the DACORB in the relevant Army regulation, Army Regulation 600-43, explains that the Deputy Chief of Staff of the army will “(1) Develop policies and criteria to classify and dispose of military personnel who claim conscientious objection to participation in war in any form or the bearing of arms” and “(2) Establish the Department of the Army Conscientious Objector Review Board (DACORB), which will make final disposition on all cases requesting discharge (1-0),” see Army Reg. 600-43 ¶ 1.4(a), and the DACORB “will make the final determination on all applications requesting discharge.” Id. ¶ 2-8(a). As far as we can tell, the DACORB decides whether to grant each conscientious objector application individually, without creating precedential "opinions” or binding interpretations of the applicable Army regulations.

. Our last conscientious objector case was in 1975, see United States ex rel. Foster v. Schlesinger, 520 F.2d 751 (2d Cir.1975), and our last case reviewing a decision of the DACORB, as opposed to the Secretary of the Navy or the Secretary of the Air Force, was in 1973, see Nurnberg v. Froehlke, 489 F.2d 843 (2d Cir.1973).

. Although it is not relevant to the question of the appropriate legal standard, we note as a matter of factual accuracy that Dr. Watson has now repaid to the Department of Defense all moneys he had received in connection with his scholarship.

. We do not believe it is necessary to respond to the dissent’s analysis of the facts of this case except to point out two factual inaccuracies. First, despite the dissent’s hypotheses, there is no information in the record about whether Dr. Watson would be required to make final treatment decisions for American soldiers. Indeed, the dissent's analysis would make all radiologists, if not all doctors, ineligible for discharge as conscientious objectors. Second, there is no indication in the record that Watson's written application was prepared by anyone but Watson himself.