792 F.Supp.2d 269 (2011)
NEW ENGLAND HEALTH CARE EMPLOYEES WELFARE FUND, and New England Health Care Employees Pension Fund, Plaintiffs,
v.
iCARE MANAGEMENT, LLC; Chelsea Place Care Center, LLC; Trinity Hill Care Center, LLC; Wintonbury Care Center, LLC; Farmington Care Center, LLC; Meriden Care Center, LLC, a/k/a Silver Springs Care Center; Westside Care Center, LLC; Bidwell Care Center, LLC; and Kettle Brook Care Center, LLC, Defendants.
No. 3:10-cv-00894 (CSH).
United States District Court, D. Connecticut.
May 2, 2011.
Order Denying Motion for Reconsideration June 29, 2011.
*272 John M. Creane, Michael E. Passero, Law Offices of John M. Creane, Milford, CT, for Plaintiffs.
Jonathan M. Starble, Starble & Harris, Avon, CT, for Defendants.

RULING ON PLAINTIFFS' MOTION FOR PREJUDGMENT REMEDY AND DEFENDANTS' MOTION TO STAY PROCEEDING
HAIGHT, Senior District Judge:
Plaintiffs (collectively, "the Funds") seek a prejudgment remedy ("PJR") to secure from the Defendants (collectively, "the Employers") their claimed damages. The parties have fully briefed the issue, including providing supplemental briefing, and appeared before the Court via teleconference. [Doc. 44.] The PJR application is now ripe for decision. For the following reasons, the Funds' PJR application will be granted.[1]

I. BACKGROUND

A. The Current Dispute

1. The Parties
The Plaintiff Funds are Taft-Hartley multi-employer trust funds established under the terms of the Labor Relations Management Act, 29 U.S.C. § 185(c)(5), to provide welfare and pension benefits to members of the New England Health Care Employees Union, District 1199 ("the Union"). The Funds are administered by a board of trustees comprised of both Employer and Union officers or members. The Funds receive contributions from the employers of Union members pursuant to collective bargaining agreements ("CBAs").
The Defendant Employers are eight nursing facilities in Connecticut and iCare Management, LLC, a company that provides management services to those facilities. Each of the nursing facilities is an employer of Union members and a party to the CBAs, while iCare is a "party in interest" as defined by Section 3(14) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(14). Each Defendant Employer is obligated by the CBA to which it is a party to make monthly contributions the Funds.

2. The Complaint
The Funds filed their Complaint on June 7, 2010 pursuant to Section 515 of ERISA, seeking to recover "delinquent contributions, interest, penalties, and liquidated damages" owed to the Funds by the Employers. The relevant contributions are governed by three separate but materially identical CBAs signed by the Employers and the Union.[2] The CBAs require that the Employers make contributions to the Funds based "upon the previous month's *273 gross payroll." The core of this dispute is how the gross payroll is calculated. The CBAs require that the contributions be calculated from the "gross payroll for the Employees in the bargaining unit who regularly work an average of twenty (2) or more hours per week...." ("Contribution Provisions"). The Funds argue that the Employers are in violation of the CBAs by excluding wages paid to workers for contract benefits such as paid vacation, holiday, and sick leave from the monthly gross payroll. Employers respond that they are following the plain language of the CBAs by excluding from the calculation those workers who are not at work but are being paid.
This is not the first time the parties have disputed the calculation of Employer contributions under the CBAs.

B. Prior Litigation
The Funds and Employers have an extensive litigation history regarding the contribution requirements of their various CBAs. Indeed, the precise issue in this case was litigated previously before Magistrate Judge Joan G. Margolis of the District of Connecticut, New England Healthcare Employees Welfare Fund, et al. v. iCare Management, LLC, et al., No. 3:08-cv-1863, 2009 WL 3571311 (D.Conn. Oct. 26, 2009) (the "Underlying Action"). Judge Margolis's decision in the Funds' favor was recently affirmed by the Second Circuit in a summary order. Welfare Fund v. Bidwell Care Center, LLC, No. 10-1859-cv, 2011 WL 1289182 (2d Cir. April 6, 2011) (the "Summary Order").[3]
As in the current case, the Underlying Action concerned the parties' differing interpretations as to what contributions the CBAs required in respect of workers who were paid during the relevant time periods but were not actually at work. The Funds brought an action in December 2008 alleging that the Employers were in violation of the then operative 2005 CBAs. Prior to November 2008, the Employers had contributed to the Funds based on the number of hours paid to workers, regardless of whether the worker was at actually at work or on paid leave. On November 20, 2008, the Employers notified the Union workers that their prior contribution practice was inconsistent with the terms of the CBAs and henceforth they would only contribute to the Funds based on hours the workers actually worked.
After a bench trial, Judge Margolis held that the Contribution Provisions in the 2005 CBAs were ambiguous and then used extrinsic evidence, including the Funds' contribution policies, other employer contribution practices, and the Employers' own past practices, to conclude that the 2005 CBAs required contributions based on hours paid. Underlying Action at 24-26. On appeal, the Second Circuit affirmed Judge Margolis's finding that the Contribution Provisions were ambiguous and noted that there was "no clear error" in her determination that the ambiguous provisions included paid hours. Summary Order at 8.

C. The Prejudgment Application
While the Employers' appeal of Judge Margolis's judgment was pending, the Funds filed the current Complaint in the case at bar, alleging that the Employers were continuing to under-contribute to the Funds, with the result that the Funds' damages increased with each inadequate monthly payment. The case was originally *274 assigned to District Judge Bryant. On June 14, 2010, the Funds applied to Judge Bryant for a PJR, seeking thereby to secure the alleged damages while the current action is pending. The case was transferred to the undersigned on December 6, 2010. On January 20, 2011, the Court ordered supplemental briefing to determine whether there were any material and contested factual issues that would require an evidentiary hearing. Following the Court's review of these submissions, the Court held a hearing via teleconference with counsel on February 16, 2011 to discuss the PJR application and whether an evidentiary hearing was necessary to decide the PJR.

II. STANDARD OF REVIEW
Rule 64 of the Federal Rules of Civil Procedure provides that every prejudgment remedy available under state law is also available to litigants in federal court. Connecticut provides for an expansive prejudgment remedy, and it is under Connecticut law that the Fund's application must be reviewed. The Court discussed the standard of review in its Preliminary Opinion and Order Concerning Plaintiffs' Application for Prejudgement Remedy ("Preliminary Order") [Doc. 31.]in which I said at 7-8:
The Funds' entitlement to a prejudgment remedy is governed by Conn. Gen. Stat. §§ 52-278a-g. In Walpole Woodworkers, Inc. v. Atlas Fencing, Inc., 218 F.Supp.2d 247, 249 (D.Conn.2002), Judge Arterton summarized a statutory provision central to the case at bar: "[a]n attachment may issue under Connecticut's prejudgment attachment statute upon a showing of `probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought ... will be rendered in favor of the plaintiff.' § 52-278d."
Additional statutory provisions particularly relevant to the Court's resolution of the Funds' application are found in §§ 52-278(c)(g) and 52-278(d)(a). Subsection (c)(g) provides in part: "[a] defendant may request a hearing to contest the application for a prejudgment remedy, assert any exemption or make a request concerning the posting or substitution of a bond." Subsection (d)(a) provides in part: "[t]he defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff...."
In Walpole Woodworkers, 218 F.Supp.2d [at] 249, Judge Arterton said of the "probable cause" element:
Probable cause for these purposes has been defined by the Connecticut courts as a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Thus, the plaintiff does not have to prove its case by a preponderance of the evidence, but must show that there is probable cause to sustain the validity of the claim.
Preliminary Order at 7-8 (citations and internal quotation marks omitted from Walpole Woodworkers passage).
As the Connecticut Supreme Court has stated, "[p]robable cause is a flexible common sense standard. It does not demand *275 that a belief be correct or more likely true than false." TES Franchising, LLC v. Feldman, 286 Conn. 132, 137, 943 A.2d 406 (Conn.2008) (citation and quotation omitted).

III. DISCUSSION
In the wake of the Second Circuit's affirmance of Judge Margolis's opinion in the Underlying Action, three issues remain to be resolved at this juncture: (1) whether an evidentiary hearing is necessary to decide the PJR application; (2) if no additional hearing is necessary, whether the Funds met their burden of proof to obtain a PJR; and (3) if the Funds have met their burden and demonstrated their entitlement to a prejudgment remedy, what is the amount of damages on their claim that must be secured.

A. Is an Evidentiary Hearing Necessary
The Connecticut PJR statute provides that "the defendant shall have the right to appear and be heard at [a] hearing." Conn. Gen.Stat. § 52-278d(a). In the Court's Preliminary Order, the Court determined that a "`hearing' within the context of the PJR statute does not necessarily require an evidentiary hearing with the testimony of witnesses. If the applicant can show by documents, including affidavits, uncontroverted or incontrovertible supporting facts which under governing law reasonably show that probable cause exists to conclude that his claim will succeed, the judgment of attachment should issue." Preliminary Order at 10. An evidentiary hearing is only necessary if there exist "genuine issues concerning material facts." Id.
The Funds submit that there are no material factual issues in dispute that would require an evidentiary hearing on whether they are entitled to prejudgment relief. The Employers contend that if the 2009 CBAs' Contribution Provisions are ambiguous (as the Second Circuit has now held, affirming Judge Margolis on the point), an evidentiary hearing is necessary to allow the Employers to present extrinsic evidence in support of their disputed interpretation of those Contribution Provisions. Specifically, the Employers would present testimony from the President and CEO of iCare that "when he signed the 2009 CBAs on behalf of the Employers, it was his specific intent to contribute to the Funds based on the consistent practice that had been in effect since November 2008 and is still in effect." Def. Part IV(A) & Part IV(B) Statement Regarding Plaintiffs' Application for Prejudgment Remedy at 3. [Doc. 34.] The Employers might also seek to present corroborating testimony regarding the intent of the Employers in signing the 2009 CBAs. The Employers do not contend that they communicated this intention to the Funds prior to the negotiation and signing of the 2009 CBAs, and the Funds do not dispute that the Employers had the intention of continuing their post-November 2008 interpretation of the Contribution Provisions in the 2009 CBAs.
The Court accepts, for the purposes of the the Funds' PJR application, the propositions that (1) the Employers had the subjective intent to interpret the Contribution Provisions as excluding those workers who were paid for twenty or more hours but did not actually work during that period, and (2) the Employers did not communicate that intent or purpose to the Funds when the 2009 CBAs were being negotiated.
For the reasons that follow, I conclude that no evidentiary hearing is necessary.

B. Have the Funds Met Their Burden of Proof
I consider under this heading whether the Funds have met their burden of proof *276 in respect of their entitlement to a PJR. The purpose of a PJR is to secure payment by a defendant of a plaintiff's claims. A plaintiff applying for a PJR must show probable cause to believe that at the end of the litigation the Court will give him judgment against the defendant in an amount which plaintiff seeks to secure by prejudgment remedy. This requires me to take into account all stages of this litigation, including in chronological order the trial before Judge Margolis and her judgment, the Funds' PJR application to this Court while the Employers' appeal from that judgment was pending, and the Court of Appeals' opinion affirming Judge Margolis's decision and judgment in the Funds' favor.
The Funds' application to this Court for a PJR relied principally upon Judge Margolis's holdings in the Underlying Action that the Contribution Provisions in the 2005 CBAs were ambiguous and that proof from extrinsic sources showed that the Funds had correctly interpreted those provisions. It followed from those conclusions, the Funds contended, that the Employers were liable to them for all monthly underpayments since the Employers unilaterally reduced their contributions, a total amount that increases with every passing month. These circumstances were sufficient, in the Funds' submission, to show statutory "probable cause" to believe that final judgment for the Funds and against the Employers will be rendered in the amount sought to be secured by the prejudgment relief prayed for, thereby entitling the Funds to prejudgment relief.
The Employers' initial opposition to the Funds' PJR application in this Court, filed while the appeal was pending, argued that Judge Margolis had gotten it all wrong and the Second Circuit, perceiving her errors with the assistance of Employers' counsel, would eventually reverse her judgment. If one indulged those assumptions, as I was asked to do, the Funds would have no underlying claim against the Employers and consequently no damages or judgment to secure, thereby mooting the Funds' PJR application because they could not prove the probable cause to expect judgment in their favor necessary to entitle them to a PJR.
However, the case took a quite different turn. The Second Circuit heard argument on the Employers' appeal earlier this year. This Court, anticipating with counsel a certain delay in the Court of Appeals' decision, was engaged in drafting its decision on the Funds' PJR application when, on April 6, 2011, the Second Circuit filed its Summary Order affirming Judge Margolis's opinion and judgment in all respects. The Court said at the outset: "We review de novo the magistrate judge's legal conclusions, including whether a contract term is ambiguous, but we defer to her factual findings, such as the interpretation of an ambiguous provision, unless clearly erroneous." 2011 WL 1289182, at *1 (citations omitted). The Second Circuit, at a length and with detail not typically found in summary orders, then quoted the 2005 CBAs' contribution provisions, recited the conflicting arguments the parties had previously addressed to Judge Margolis, and decided the core issues as follows:
Thus, the parties also knew how to distinguish expressly between hours "actually worked" and paid hours, and sometimes counted unworked absences as time worked. Considering the conflicting usage of "work," "actually worked," and "gross payroll," and the contribution policies' reference to paid hours, we agree with the magistrate judge that the twenty-hour minimum provision is ambiguous.
Because the defendants do not here contest the magistrate judge's factual determination *277 interpreting the ambiguous provision as including paid hours, they have forfeited any such arguments. In any event, we identify no clear error in that conclusion where the evidence showed that defendants included paid hours in determining contribution eligibility for ten years and all other employers followed the same practice.

Id. at *3 (citation omitted) (emphases added). The Second Circuit's language following the emphasized phrase "in any event" shows that whether or not the Employers should be regarded as forfeiting any argument that Judge Margolis's interpretation was wrong, the Court of Appeals agreed with her interpretation and had in mind all the sources of extrinsic evidence upon which Judge Margolis had relied. Her opinion, 2009 WL 3571311, reveals that Judge Margolis used extrinsic evidence generated by the Funds' contribution policies, other employer contribution practices, and the Employers' own past practices, to conclude that the 2005 CBAs resolved the ambiguity by requiring Employer contributions based on hours paid even if not worked (the Funds' interpretation), rather than excluding hours not actually worked even if paid (the Employers' contention). The same analyses apply to the 2009 CBAs, which as noted supra contain identical contribution provisions.
Following the Second Circuit's promulgation of its Summary Order, this Court directed the parties to submit supplemental submissions discussing the effect, if any, of the Second Circuit's holdings upon the Funds' pending prejudgment remedy motion before this Court in the case at bar. The parties have complied. The Court has considered the Employers' supplemental statement [Doc. 46] and that of the Funds' [Doc. 47]. The positions the parties take in these submissions are predictable.
The Funds contend that when Judge Margolis's opinion and judgment and the Second Circuit's Summary Order affirming them are read together, the Funds "have established, on the existing record, that probable cause exists that they will prevail on their claim for delinquent contributions against the Employers and are entitled to a prejudgment remedy to secure their claim in the instant action." [Doc. 47] at 6. The instant action, it is useful to recall, was filed by the Funds to recover damages inflicted by the Employers' unilateral decision in November 2008 to exclude from their monthly contributions to the Funds hours paid to Union members but not actually worked by them, to the extent that Judge Margolis's judgment does not award such damages. In that regard, the Funds' damages total increases month by month, as the Employers cling to their interpretation of the CBAs, notwithstanding the unanimous contrary conclusion of four federal judges (one district court magistrate judge and three Second Circuit judges).
While the Employers' post-appeal submission [Doc. 46] does not quite put it this way, their core contention is that the Second Circuit panel, just like Judge Margolis, got the case all wrong, in respect of both the perceived ambiguity in the 2009 CBAs' contribution provisions (a question of law) and the proper interpretation of those ambiguous provisions (a question of fact).
As to the ambiguity issue, the Employers acknowledge that the Second Circuit's Summary Order "upheld Judge Margolis's determination that the relevant CBA language is ambiguous." [Doc. 46] at 2. Unpersuaded, "[t]he Employers continue to maintain that the relevant language is unambiguous" and, aware that the question is one of law, "are in the process of filing a Petition for an En Banc Hearing." Id. (emphasis in the original).
*278 As to the interpretation issue, the Employers analyze the language of the Second Circuit's Summary Order, particularly the two paragraphs quoted supra from 2011 WL 1289182 at *3, and conclude from it: "Without a doubt, the Second Circuit utilized the contribution policies for the purpose of finding an ambiguity as a matter of law, not resolving the ambiguity as a matter of fact." [Doc. 46] at 7 (emphases in original). The Employers seem to read the Summary Order as addressing the ambiguity issue but saying nothing substantive or precedential about how the ambiguity should be interpreted. On the interpretation issue, the Employers apparently have in mind presenting extrinsic evidence to this Court within the context of the Funds' application for prejudgment relief.
That application, one must recall, turns upon whether the Funds have shown "probable cause" to believe that a judgment will be rendered in their favor "in the amount of the prejudgment remedy sought," Conn. Gen.Stat. § 52-278d, or as stated elsewhere, a showing "that there is probable cause to sustain the validity of the claim." Walpole Woodworkers, 218 F.Supp.2d at 249. Accordingly, a plaintiff seeking a PJR "does not have prove its case by a preponderance of the evidence," id. In short, the Court must decide now whether the Funds are entitled to a prejudgment remedy, without waiting for a final determination of the merits of the underlying claims included in the case at bar, but instead assessing the probabilities as revealed by the present record.[4]
At the end of the day in the instant case, the Employers must succeed on all the issues raised by the Underlying Action, the Second Circuit's decision on appeal, and the post-appeal submissions, to be able to argue it is improbable that the Funds will sustain the validity of their claims at the end of all the litigation (to apply the PJR formula in reverse). I conclude that I cannot accept that proposition; or, to state the matter in a more conventional style, I conclude that the Funds have made the requisite showing of probable cause to believe that they will obtain a judgment from this Court for damages, measured by the difference in monthly contributions resulting from the Employers' unilateral change in the calculations in November 2008, in amounts which are not included in the judgment entered by Judge Margolis in the companion case. My reasons follow.
On the question of whether the relevant provisions in the 2009 CBAs are ambiguous, we lesser figures are entirely in the hands of the Second Circuit. The panel hearing the appeal agreed with Judge Margolis and held that the contribution provisions are ambiguous. The Employers do not accept that holding and say they will move for an en banc hearing on the question. The Second Circuit will grant that motion or not. If it declines to do so, or hears the case en banc and affirms the panel's order, even the Employers concede that "such action will constitute a conclusive determination that the language at issue in the 2005 CBAs and the 2009 CBAs *279 is ambiguous." [Doc. 46] at 2 (emphasis added).
I am asked, in the PJR context, to evaluate the probability that "a majority of the active judges who are in regular service," Fed. R.App. P. 35(a), will vote to order a rehearing en banc. District judges exercise a deference appropriate to their station when predicting what court of appeals judges will do in a particular case. When the question is whether a full court of appeals will rehear a panel decision en banc, the analysis begins with Fed. R.App. P. 35(a), which provides in pertinent part:
An en banc hearing or rehearing is not favored and ordinarily will not be granted unless:
(1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or
(2) the proceeding involves a question of exceptional importance.
Rule 35(b)(1) provides in pertinent part that a petition for rehearing en banc must begin with a statement that either
(A) the panel decision conflicts with a decision of the United States Supreme Court or of the court to which the petition is addressed ... and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions; or
(B) the proceeding involves one or more questions of exceptional importance...; for example, a petition may assert that a proceeding presents a question of exceptional importance if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue.
A conflict with another Circuit is the only example Rule 35(b)(1)(B) gives of "a question of exceptional importance."
Explaining its refusal to order rehearing en banc in Watson v. Geren, 587 F.3d 156 (2d Cir.2009), the Second Circuit used language which quotes or parses Rule 35(a). The Watson majority of active appeals judges refusing to order an en banc rehearing gave its reasons in a per curiam opinion, 587 F.3d at 157-159. "The fact that this issue arises so infrequently lends credence to our view that en banc review is not `necessary to secure or maintain uniformity of the court's decisions.'" Id. at 158 (citing and quoting Rule 35(a)(1)). "We adhere to the well-established principle that `en banc courts are the exception, not the rule.'" Id. (citing and quoting United States v. American-Foreign S.S. Corp., 363 U.S. 685, 689, 80 S.Ct. 1336, 4 L.Ed.2d 1491 (1960)). "Given that the panel's decision does not seek to depart from existing standards, the issue presented by this appeal is not properly considered a `question of exceptional importance' within the meaning of Federal Rule of Appellate Procedure 35(a)(2)." Id.[5]
While I approach with the requisite deference a question which falls to be decided by higher authority, it seems to me that the odds are very much against the Employers succeeding on their en banc petition to the Court of Appeals. That is because of the seeming total absence of those factors which Rule 35(a) and (b), interpreted by cases such as Watson v. Geren, identify as militating in favor of en banc review. While I have not seen the grounds the Employers have or will assert for en banc review, I am unable to discern any conflict between the panel's Summary Order and a decision by the Supreme *280 Court or the Second Circuit or any other Circuit. Three experienced Second Circuit judges issued the Summary Order. The panel was not diluted (one hopes that is not quite the right word) by a district judge or visiting judge. The panel was unanimous; no dissent suggests the existence of a question of exceptional importance requiring en banc review. The Summary Order does not seek to depart from existing standards but rather to adhere to them. The issues raised by the Employers' unilateral interpretation of the relevant CBA provisions have apparently not occurred to any other parties in an industry in which such provisions are common, which cuts against a suggestion that the Summary Order raises a question of exceptional importance. The Summary Order affirms, in careful but unremarkable language, the holding of the magistrate judge that the contracts are ambiguous and should be interpreted in a certain way. It is like many other cases.[6] This case fits comfortably within the restraints imposed by the principle that "en banc courts are the exception, not the rule." Id.
Turning from the ambiguity of the CBAs' contribution provisions to their interpretation, the questions arise: Does the Summary Order undertake to interpret that ambiguous language at all? And if it does, is the panel's interpretation a likely subject for en banc review?
The casual reader may be surprised by the first question. So might the three Second Circuit panel judges, who condensed their holdings into the two previously quoted paragraphs from 2011 WL 1289182, at *3 by saying in the first that "we agree with the magistrate judge that the twenty-hour minimum provision is ambiguous," and in the second that they found no clear error in the magistrate judge's "factual determination interpreting the ambiguous provision as including paid hours" (emphases added). Given the panel judges' structuring of the Summary Order, whose plain language disposes of both issues, I should think they would be astounded to read in the Employers' confident submission to this Court [Doc. 46] at 7: "Without a doubt, the Second Circuit utilized the contribution policies for the purpose of finding an ambiguity as a matter of law, not resolving the ambiguity as a matter of fact." With all due respect, I have a doubt. I read the panel's Summary Order as affirming both of Judge Margolis's conclusions: on ambiguity (matter of law) and interpretation of the ambiguity (matter of fact). These are not fanciful thoughts on my part; these are the words the Second Circuit panel used.
In any event, it is clear that to avoid liability to the Funds, the Employers must persuade the panel on rehearing or the whole Court of Appeals en banc that the panel was wrong in concluding that the CBAs' contribution provisions should be read as the Funds read them. It profits the Employers nothing if the provisions are unambiguous but are not read as the Employers read them (the effect of unambiguous language, like beauty, may lie in the eyes of the beholder). How do the PJR scales of probability tip on this unavoidable issue of interpretation?
The case for the Employers on this issue is that Judge Margolis found the contribution provisions in the 2005 CBAs to be ambiguous. The Second Circuit panel's Summary Order affirmed her on that point. Since the 2009 CBAs' contribution provisions used the same language as the *281 2005 CBAs, they are ambiguous as well.[7] Accordingly, the parties' intent must be gleaned from extrinsic evidence. Judge Margolis undertook to do that. On their reading of the Summary Order, the Employers argue that it "reaffirms that past practice was the sole piece of extrinsic evidence upon which Judge Margolis construed the putative ambiguous language in favor of the Funds," [Doc. 46] at 3 (emphasis in original), and also "reaffirmed that the sole basis for Judge Margolis's factual determination was past practice prior to November 2008." Id. at 4. If one accepts those readings of Judge Margolis's opinion and the Second Circuit's Summary Order affirming it, then the single mound of extrinsic-evidence sand supporting the judgment in the Funds' favor is washed away. The Employers assert that "this Court must interpret the relevant language based on extrinsic evidence of intent in September 2009," and note that "when the 2009 CBAs were signed, the Employers had unequivocally changed their practice and had been contributing to the Funds based on the `worked' method for almost a year," i.e., since the Employers' unilateral declaration in November 2008. [Doc. 46] at 4 (emphasis in original). The Employers seem to conclude from all this that the sole extrinsic support of "past practice" is washed away because the Employers suddenly and unilaterally abandoned it in 2008; and, the argument continues, there cannot be a practice probative of these parties' intent if the Employers ceased conforming to it.
In the context of a motion by the Employers for an appellate rehearing by the Second Circuit panel or en banc, the persuasiveness of that conclusion is primarily for Court of Appeals judges to evaluate. In the PJR context, this Court has a secondary obligation to weigh in a deferential manner the probability of the Second Circuit granting rehearing and vacating the panel's order. But as the trial judge in the instant case, I also have a primary obligation to determine whether the Employers' newly formed interpretation precludes the Funds from demonstrating probable cause under the Connecticut statute to believe they will ultimately succeed on the merits.
Of course, these District Court judicial functions overlap. If one may discern a Second Circuit ruling on the probative effect of industry practice in interpreting identical CBA language to that at bar, that ruling is binding on this Court in this case, although the Court of Appeals delivered it in a case bearing a different docket number and governed by 2009 CBAs, rather than 2005 CBAs.
I may perform both judicial functions, secondary and primary, by stating my preliminary conclusion that the Employers read Judge Margolis's opinion and the Second Circuit's Summary Order too narrowly. Both judicial works are painted with a broader brush.
Judge Margolis said of the Employers' "new calculation method":
Conversely, the longstanding contribution method of all involved parties, and of all other contributing employers to plaintiff Funds (see Tr. 46), which is to include all of an employee's paid hours, whether for worked hours or paid time off, when applying the "20 hour or more" contribution requirement, represents *282 a reasonable interpretation of the plain language of the contribution policy, and as such, judicial deference to such policy is required by ERISA. Moreover, as the Second Circuit advised in Brown v. Health Care & Ret. Corp. of Am., 25 F.3d 90, 93 (2d Cir.1994), the "industry's uniform construction of [a clause to the contrary of defendants' construction] is, in the collective bargaining setting, to be given evidentiary significance by the Courts." In this case, there are fifty employers that contribute to the Pension Fund, yet only defendant Employers believe that the "plain language" of the CBAs requires an alternative method of calculating contributions. (See Tr. 25-27).
2009 WL 3571311, at *7 (footnotes and some citations and internal quotation marks omitted) (emphases added).
The Second Circuit Summary Order succinctly affirmed Judge Margolis's evidentiary analysis: "In any event, we identify no clear error in that conclusion where the evidence showed that defendants included paid hours in determining contribution eligibility for ten years and all other employers followed the same practice." 2011 WL 1289182, at *3 (emphasis added).
These judicial analyses make it crystal clear that in the Underlying Action, both Judge Margolis and the Second Circuit gave significant probative value to industry practice revealed by the conduct of non-party employers. The Employers' bootstrapping effort to erase that industry practice because they unilaterally chose to disregard it is neither persuasive nor appealing. The Second Circuit spoke directly to that point in the Summary Order when it rejected the Employers' contention that the contribution policies "are irrelevant because they were amended on November 20, 2008, the day defendants sent notices to employees warning of the calculation change," instead approving the magistrate judge's conclusion that "the operative language was unchanged when defendants stipulated to the relevance of the contribution policies for purposes of admission and provided no evidence of a differing version." 2011 WL 1289182, at *2 n. 4.
Similarly, I cannot accept the Employers' present contention that "the sole basis for Judge Margolis's factual determination was past practice prior to November 2008." [Doc. 46] at 4 (emphasis added). She noted in her opinion: "Although the CBAs expired in March 2009, counsel agreed that the parties are still conducting themselves as if the CBAs are still in effect. (Tr. 15-16)." 2009 WL 3571311, at *2. Judge Margolis clearly had in mind, and based her factual determination of interpretation in part upon, industry practice continuing through the trial before her and up to the date of her opinion on October 26, 2009. Nothing in the Second Circuit's affirmance is inconsistent with this. I do not agree with the Employers' seeming argument that probative evidence of industry practice could not come into being after November 2008, when the Employers abruptly changed their contribution calculations, thereby precipitating the trial which caused that evidence to become relevant. The CBAs' operative language remained unchanged. The Employers' newly discovered interpretation remained at odds with that of the rest of the industry. Evidence of that continuing industry practice, even after November 2008, was and is probative of the parties' intent and mutual understanding.
I return to the probability of the Employers persuading the Second Circuit to vacate the panel's Summary Order on a petition for rehearing on this issue. The most that can be said for the Employersand it is something of a stretchis that placed alongside the Funds' interpretation *283 of the CBAs' contribution provisions, the Employers' interpretation "is also reasonable." Summary Order, 2011 WL 1289182, at *2. The work hour provision would then "be ambiguous because it is susceptible to more than one reasonable interpretation." Id. (citation internal quotation marks omitted). Judge Margolis held that the Funds' interpretation was correct. The Second Circuit treated her conclusion as a "factual determination" (a/k/a a "finding of fact"), applied the standard of review of "clear error," and affirmed her on the point. I regard it as unlikely that the panel or the full court would grant a rehearing in order to disturb any of the panel's reasoning, which adheres to well-established and non-controversial legal principles.
For all the foregoing reasons, I conclude that the plaintiff Funds have shown probable cause that a judgment will be rendered in their favor, as required by § 52-278d. I regard myself as bound by the Second Circuit's rulings on the ambiguity and interpretation questions, unless they are amended or vacated on rehearing. To the extent that I am not bound by what the Second Circuit has said, I am at this preliminary "probable cause" stage persuaded by those words and those of Judge Margolis that the Funds are entitled to the prejudgment relief of attachment. While I have considered all of the Employers' contentions, whether or not discussed supra, they do not establish a need for an evidentiary hearing at this stage of the case, considered singly or together.
It remains to consider the amount of the attachment which the Funds require to secure their claims: an amount that continues to increase on a monthly basis as the Employers persist in their contribution calculation.

C. Calculating the Remedy
Two principal questions remain with respect to the calculation of the prejudgment remedy, which is to say, the total amount to be included in this Court's order and judgment of attachment.
The first question is whether to include in the remedy the damages denied by Judge Margolis in her Supplemental Memorandum of Decision in the Underlying Action. [Doc. 48 in the Underlying Action.] Judge Margolis denied the Funds damages from May 19, 2009 to November 13, 2009 due to "the absence of sworn affidavits or other substantiation" of the damages calculations submitted by the Funds. Id. at 3. The Funds seek to recover in this action damages for the alleged damages since May 19, 2009 to the present. The Funds' instant complaint is based in part upon the alleged inadequacies of the Employers' continuing monthly payments after judgment adverse to the Employers was first entered in the Underlying Action on October 26, 2009. But the Funds also seek to recover in this action amounts for the alleged damages since May 19, 2009 (the beginning of the period excluded by Judge Margolis) to the present. The Employers argue that the doctrine of res judicata prohibits the Funds from recovering damages that accrued before November 14, 2009. The Funds' position appears to be that neither res judicata nor anything else reduces their right to damages incurred during the period excluded by Judge Margolis.
This is a continuing dispute. The Second Circuit does not appear to have addressed res judicata or comparable preclusions on the appeal from Judge Margolis's judgment. Assuming arguendo that the Funds did not cross-appeal from this partial denial of damages by the District Court, that may or may not factor into questions of issue preclusion; I intimate no present view on the point.
*284 A second question is the proper damages calculation for the PJR. The Funds submitted an affidavit in their initial application for PJR identifying damages, as well as in their supplemental briefing in January 2011. However, the January 2011 supplement briefing did not purport to calculate the total delinquency nor include any interest owed. In that regard, the amount inserted in the PJR will have to include appropriate provisions for the monthly increases in the Funds' potential final judgment in this action, if the Employers see fit to continue to use their presently judicially discredited calculation.
In these circumstances, the Court directs the parties to file and serve simultaneously on or before May 16, 2011 updated written submissions calculating the damages that fall within the "probable cause" PJR protocol. Those submissions must assume, without prejudice to subsequent developments, that the Second Circuit will decline any rehearing review of the panel's Summary Order. Reply submissions may be filed and served simultaneously on or before May 23, 2011.

IV. CONCLUSION
For the foregoing reasons, the Plaintiffs' application for a PJR is GRANTED in principle. Decision on the amount of the relief in practice is RESERVED pending the further submissions directed by this Order and the Court's further Order in the case.
Defendants' Motion to Stay Proceedings is DENIED as moot.
It is so ORDERED.

RULING ON PENDING MOTIONS
Pending before the Court are several motions as well as the damages calculation for the Plaintiffs' ("Funds") successful prejudgment remedy ("PJR") application against the Defendants ("Employers"). For the following reasons, the Employers Motion to Reconsider is DENIED; the individual employers are ORDERED to satisfy the PJR remedy as detailed in the Third Section of this ruling; and the Funds' Motion to Strike is DENIED in part, and GRANTED in part.

I. BACKGROUND
Familiarity with the Court's prior rulings in this case is assumed. On May 2, 2011, the Court issued its Ruling on the Funds' Motion for Prejudgment Remedy and the Employers' Motion to Stay Proceedings ("PJR Ruling"). [Doc. 48.] The Employers filed a Motion for Reconsideration on May 16, 2011, alleging that the Court erred by relying on an incorrect assumption in determining that no evidentiary hearing was necessary to decide the PJR application. [Docs. 52 & 53.] The Funds filed a memorandum in opposition to the Employers' motion on June 6, 2011. [Doc. 56.] This motion is now ripe for consideration.
In the PJR Ruling, the Court granted the Funds' application for a PJR in principle, but did not determine the damages to be secured. Rather, the Court ordered the parties to provide briefing on the proper calculation of damages for the PJR. They have done so and this issue is ripe for consideration. [Docs. 50, 51, 54, & 55.]
Finally, the Funds have an outstanding Motion to Strike Defendants' Affirmative Defenses that was filed on October 21, 2011. [Doc. 16.] The Employers have filed a memorandum opposing this motion [Doc. 19], to which the Funds replied. [Doc. 23.] Now that the PJR application has been decided, this motion is also ripe for consideration.

*285 II. EMPLOYERS' MOTION TO RECONSIDER THE PJR RULING
"The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlookedmatters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir.1995). The District of Connecticut's Local Rules require that such a motion include "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." L.R. CIV. P. 7(c)(1).
The Employers argue that the PJR Ruling was "based on a false factual premise." Defs.' Mem. at 1. In particular, the Employers argue that the Court mistakenly accepted as true that the "[t]he Employers do not contend that they communicated [their intention to continue their post-November 2008 contribution practices] to the Funds prior to the negotiation and signing of the 2009 CBAs." PRJ Ruling at 8. The Employers argue that this assumption was inaccurate given that they "had loudly broadcasted to the world that they had changed their contribution method that began in November 2008." Defs.' Mem. at 4. The Employers point to the letter they sent to both the Funds and the Union on November 20, 2008 as evidence that they communicated their intention to continue this interpretation under the 2009 CBAs. Id.
The Employers assert that this mistaken assumption requires reconsideration of "whether there should be an evidentiary hearing to determine if the Employers communicated their intent to the Funds and the Union in 2009." Id. at 7. However, the Employers fail to identify any evidence not already in the record that they would present at such a hearing. Indeed, the only evidence they point to as providing evidence of intent regarding the 2009 CBA negotiations is the November 2008 letter, a letter the Court is well aware of and cited in its PJR Ruling. PJR Ruling at 4. Tellingly, prior to the pending Motion for Reconsideration, the Employers did not claim that the November 2008 letter had anything to do with the 2009 CBA negotiations.
In the Court's Preliminary Opinion and Order Concerning Plaintiffs' Application for Prejudgment Remedy ("Preliminary Order"), the Court ordered the parties to file "[a]n itemized statement of factual issues necessary to the determination of the prejudgment remedy motion. Each party's statement should identify, with respect to each issue, the evidence (testimony, exhibits, etc.) the party intends to offer in support of their position." [Doc. 31] at 11. In response to the Preliminary Order, the Employers replied:
The Employers will present testimony from Chris Wright, President and CEO of iCare, that when he signed the 2009 CBAs on behalf of the Employers, it was his specific intent to contribute to the Funds based on the consistent practice that had been in effect since November 2008 and is still in effect. The Employers may also present corroborating testimony from Michael Plausse, CFO of iCare, and/or Barbara Larson, Vice President of Human Resources of iCare.
Defendants' Part IV(A) & Part IV(B) Statement Regarding Plaintiffs' Application for Prejudgment Remedy ("Employers' Part IV Statement") at 3. [Doc. 34.]
Even accepting the Employers' assertion that their November 2008 letter constitutes extrinsic evidence for the purposes of interpreting the 2009 CBAs, the Employers do not meet their burden for the *286 Motion for Reconsideration. The Employers must demonstrate that the Court overlooked some facts "that might reasonably be expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257. The Employers seem to argue that the Court should hold an evidentiary hearing because the Court did not consider the November 2008 letter to be evidence regarding the 2009 CBA negotiations. But the Employers do not assert that there is any new evidence to present. The focus on a new evidentiary hearing without any reference to new evidence is bewildering.
The Motion for Reconsideration is denied because the Employers have failed to point to overlooked evidence that "might be reasonably expected to alter" the Court's conclusion that the Funds demonstrated probable cause that they would succeed in the action. I accept that the November 2008 letter may be regarded as evidence that the Employers communicated to the Funds their intent to continue their disputed contribution practices under the 2009 CBAs. But that unilateral expression of intent does not alter the conclusions reached by the Court in its PJR Ruling.

III. DAMAGES FOR PREJUDGMENT REMEDY APPLICATION
The Court's PJR Ruling did not calculate the amount of damages owed to the Funds. Instead, the Court ordered supplemental briefing on damages calculation, including whether the damages should include those months of damages that were denied by Judge Margolis in her Supplemental Memorandum of Decision. PJR Ruling at 22-23. The Employers accept the accuracy of the Funds' monthly calculations, but the parties disagree about the time period that damages are owed. They dispute two key issues: (A) whether the Funds are entitled to receive damages that were denied by Judge Margolis in the previous action; and (B) whether the Funds are entitled to damages for the future months of non-compliance. The Court will address these issues in turn.

A. Res Judicata and the Pre-November 2009 Damages
In her January 13, 2010 Supplemental Memorandum of Decision, Judge Margolis denied the Funds' claim of damages from May 19, 2009 to November 13, 2009 due to "the absence of sworn affidavits or other substantiation" of the damages calculation submitted by the Funds. Id. at 3. The Funds filed a Motion for Amended or Additional Findings, which Judge Margolis denied, stating "this Court did not issue its Supplemental Decision without prejudice to renewal for these belated submissions. Plaintiffs [sic] attempt to present additional evidence for this Court's consideration is an attempt to circumvent the purpose of a Rule 52(b) motion." Ruling on Plaintiffs' Motion for Amended or Additional Findings and on Defendants' Motion to Alter or Amend Judgment at 4. [Doc. 55 in No. 3:08-cv-1863.]
The Employers argue that the doctrine of res judicata applies to the Funds' claims for damages that were previously litigated by Judge Margolis. The doctrine's requirements are well known. "A final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 196 (2d Cir.2010) (citing Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir.1997)).
While it is premature at this stage of the proceedings to decide conclusively whether res judicata bars the Funds from recovering damages prior to November 13, 2009, *287 for the purposes of determining the PJR damages, the Court concludes that the Funds may not secure by prejudgment attachment any damages calculated for a period of time before that date. There is sufficient force to the Employers' invocation of res judicata to preclude a judicial finding of probable cause that the Funds will ultimately prevail on this particular issue.

B. Future Damages
Having decided when the PJR begins, the Court must now decide when the time period for calculation of the PJR amount ends. In their supplement briefing, the Funds argue that they are entitled to the "estimated monthly delinquency that will accrue if this action is not resolved within the next year." Plaintiffs' Supplemental Submission Calculating Damages Sought Under the Court's PJR Order ("Funds Supp. Sub.") at 2. [Doc. 51.] The Employers oppose including speculative relief because the 2009 CBAsthe basis for the Funds' claimsexpired on March 15, 2011.
The Court declines to order any speculative damages be included in the PJR, but for a different reason than that asserted by the Employers. The purpose of the PJR is to secure the Funds' interests while the case is pending. But in any case where, as in the case at bar, a defendant's allegedly wrongful conduct is on-going,[1] damages embraced by a successful PJR application would continue to accumulate during the pendency of the action. To continually readjust the PJR damages would be burdensome to both the parties and the Court.
In these circumstances, the better remedy is to factor in the amounts of prejudgment interest the Funds will undoubtedly seek and probably recover if they ultimately succeed on the merits of this case. Therefore, the Court concludes that the PJR damages will be for the months of November 2009 to April 2011, which was the last month figures were provided by the Funds.[2]

C. Calculation of Damages Owed
In order to satisfy the Court's PJR damages calculation, the New England Health Care Employees Welfare Fund ("Welfare Fund") and New England Health Care Employees Pension Fund ("Pension Fund") are awarded PJR remedies from November 2009 to April 2011.
The following amounts, which include compounded interest of 1.5%,[3] are owed by the individual employers:

----------------------------------------------------------------
 Employer Welfare Fund Pension Fund
----------------------------------------------------------------
Bidwell $ 43,909.14 $15,171.46
----------------------------------------------------------------
Chelsea Place $120,483.08 $36,081.83
----------------------------------------------------------------
Farmington $ 39,323.01 $13,695.09
----------------------------------------------------------------
Kettle Brook $0.00 $ 6,126.94
----------------------------------------------------------------
Meriden $ 48,754.54 $17,067.70
----------------------------------------------------------------

*288
----------------------------------------------------------------
Trinity Hill $ 80,170.29 $24,700.13
----------------------------------------------------------------
Westside $ 60,056.14 $20,889.43
----------------------------------------------------------------
Wintonbury $54,044.41 $14,467.20
----------------------------------------------------------------

Thus, the Pension Fund is owed $148,199.78 and the Welfare Fund is owed $446,740.61 for a total prejudgment remedy of $594,940.39.

IV. THE FUNDS' MOTION TO STRIKE
The Funds have moved to strike the Employers' affirmative defenses. Motions to strike affirmative defenses are generally disfavored. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed. 2004). The standard to prevail on a motion to strike an affirmative defense is demanding. The Funds "must establish that: (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law that might allow the defense to succeed; and (3) they would be prejudiced by the inclusion of the defense." MTA Metro-North R.R. v. Buchanan Marine, L.P., 2006 U.S. Dist. LEXIS 88850, 2006 WL 3544936 (D.Conn. 2006).
In their Amended Answer, the Employers assert four affirmative defenses. [Doc. 15.] The four defenses may be summarized as follows: (1) the unambiguous language of the CBAs bars the Funds' recovery; (2) the Funds are estopped from recovering damages based on the Employers' current contribution practices because the parties entered into the 2009 CBAs with knowledge of how the Employers interpreted the contribution provisions; (3) the Funds may not recover any damages before November 13, 2009 due to the doctrine of res judicata; and (4) some or all of the Funds' claims are precluded on the grounds of collateral estoppel or judicial estoppel based on either Heffernan et al. v. iCare Management, LLC et al., 356 F.Supp.2d 141 (D.Conn.2005) or Brown v. HCRC, 25 F.3d 90 (2d Cir.1994).
The Funds have moved to strike all four of the affirmative defenses. [Doc. 16.] The First Amended Defense, alleging that "[t]he plain language of the applicable CBAs bars the plaintiffs from recovery" cannot succeed given the Second Circuit's recent summary order in Welfare Fund v. Bidwell Care Center, LLC, 419 Fed.Appx. 55 (2d Cir.2011). The Second Circuit upheld Judge Margolis's determination that the contribution provisions were ambiguous, and this Court does not have the authority to differ. Because it would cause the Funds prejudice if they again had to argue against this affirmative defense when it cannot legally succeed, the Funds' motion to strike the First Affirmative Defense is GRANTED.
In their Second Amended Defense, the Employers assert that the Funds are estopped from recovering damages because of the specific facts surrounding the 2009 CBA negotiations. The Funds argue that, as third-party beneficiaries of the CBAs, they have a statutory right to contribution independent of any conduct of the CBA negotiations. The factual and legal merits of this defense are uncertain and a motion to strike is not the appropriate mechanism to determine those merits. The Funds' motion to strike the Second Affirmative Defense is DENIED.
The Employers' Third Affirmative Defense is that res judicata bars the recovery of damages prior to November 13, 2009. As discussed above, the Court is not prepared to make a conclusive ruling on this defense but it certainly does not meet the strict standards of a successful motion to strike. The Funds' motion to strike the Third Affirmative Defense is DENIED.
The Fourth Affirmative Defense argues that either some or all of the Funds' claims *289 are precluded by either collateral or judicial estoppel. The Second Circuit, in its Summary Order, affirmed Judge Margolis's denial of a judicial estoppel claim with regards to Brown v. HCRC. To the extent that the Employers' Fourth Affirmative Defense is asserting the same argument of judicial estoppel, it is appropriate to strike. However, the Second Circuit did not address any claim of collateral estoppel and so the defense may proceed insofar as it does not contradict the Second Circuit's Summary Order. The Funds' motion to strike the Fourth Affirmative Defense is DENIED in part and GRANTED in part.

V. CONCLUSION
For the foregoing reasons, the Employers' Motion to Reconsider is DENIED, the individual employers are ORDERED to satisfy the foregoing damages awarded to the Funds for their successful PJR application, and the Funds' Motion to Strike is DENIED in part, and GRANTED in part as discussed above. Finally, counsel for the parties are ORDERED to confer and submit a revised Rule 26(f) Report on or before July 15, 2011.
NOTES
[1] The Employers had moved to stay this case pending the Second Circuit's decision in the related case of Welfare Fund et al v. Bidwell Care Center, LLC et al, No. 10-1859-cv. [Doc. 20.] As the Second Circuit issued its Summary Order affirming the District Court on April 6, 2011, the Employers' motion to stay the captioned case is DENIED as moot.
[2] Although neither the Complaint nor the Application for the PJR identified or attached the relevant CBAs, subsequent briefing clarified that the operative CBAs when the Funds commenced the Underlying Action on June 7, 2010 had become effective on September 4, 2009 for a three-year period (2009-2011). I will refer to them in text as "the 2009 CBAs."
[3] The caption for the Summary Order recites that it was not selected for publication in the Federal Reporter.
[4] The principal documents in the present record are the magistrate judge's opinion and judgment in the Funds' favor in the companion case between the Funds and the Employers, and the Second Circuit's order affirming them. The case at bar is different from the typical PJR application, where at an early stage of the case the plaintiff seeks an attachment to secure a judgment from the trial court that plaintiff hopes to win and undertakes to show probable cause that it will. In the instant case, the Funds as plaintiffs have already received a district court judgment in their favor on the central issue in the case, which the Court of Appeals has already affirmed.
[5] At this point in text, the per curiam opinion in Watson cited to Circuit Judge Newman's article appearing in 50 Brook. L.Rev. 365, 382-83 (1984), under the provocative title In Banc Practice in the Second Circuit: The Virtues of Restraint.
[6] This is not to denigrate the great importance of the case to the parties to it. But that cannot drive en banc practice. Every case is important to somebody.
[7] The Employers in their current submission do not embrace ambiguity unconditionally. On the contrary: "The Employers continue to maintain that the relevant language is unambiguous. Accordingly, the Employers are in the process of filing a Petition for an En Banc Hearing." [Doc. 46] at 2. Their argument on the interpretation point may be regarded as secondary or in the alternative.
[1] The phrase "allegedly wrongful conduct" is totally apt in the usual PJR setting, where a plaintiff seeks the security of an attachment at the inception of the case, before any judicial or trial resolution of the underlying merits. In the instant case, this Court will resolve the Funds' PJR application after Magistrate Judge Margolis decided the core contribution calculus issue in favor of the Funds and against the Employers and the Court of Appeals affirmed her decision.
[2] The months the Court refers to are the months in which payment were due. As both parties point out the monthly payments are due approximately a month later, so the November 2009 payments are for the October 2009 pay period.
[3] This seemingly modest amount of interest reflects the Funds' own suggested amount compounded monthly. Affidavit of Ellen Alch ¶ 17. [Doc. 51-1.]