UNITED STATES of America, Appellee,

v.

**Pedro LUIS, Defendant–Appellant.**

**No. 247, Docket 87–1263.**

United States Court of Appeals, Second Circuit.

Argued Oct. 20, 1987.

Decided Dec. 8, 1987.

---

Henriette D. Hoffman, New York City (The Legal Aid Soc., Federal Defender Services Unit, New York City, of counsel), for defendant-appellant.

John F. Savarese, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y.; Andrew C. McCarthy, Sp. Asst. U.S. Atty., New York City, of counsel), for appellee.

Before OAKES, CARDAMONE and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

Pedro Luis appeals from a judgment of the United States District Court for the Southern District of New York (Broderick, J.), rendered on May 21, 1987 that convicted him, after a jury trial, of one count of conspiracy to distribute and possess cocaine in the form commonly known as "crack", in violation of 21 U.S.C. § 846 (1982), and one count of distributing "crack" in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1), (c) (1982 & Supp. III 1985), and 18 U.S.C. § 2 (1982). Appellant was sentenced to concurrent terms of 18 months' imprisonment, a special parole term of five years, and a $50 assessment on each count.

This appeal raises a question of whether the trial court's charge fairly focused the jury on the defense's theory of mistaken identification. Relying on the well-documented dangers inherent in eyewitness identification appellant argues that the trial court's failure to give a special charge on that issue warrants reversal of his conviction. It may be that in some cases where the victim or observer had only a brief glimpse of the suspect under poor conditions, the vagaries of human recollection make such person a weak witness, requiring a more pointed charge on identification. Those are not the circumstances of the present case, and the charge that was given fairly and adequately presented the theory of the defense to the jury. Hence, we affirm.

## FACTS

In order to place appellant's contention in context, we review the facts briefly. In the late afternoon of January 6, 1987 two New York City Police Officers with long experience in undercover narcotics investigations were assigned to make purchases of "crack," a purified form of cocaine, in a building located at 302 West 46th Street in Manhattan. The five-story residential structure, at the time abandoned and frequented by prostitutes and drug users, is one where the two officers had made buys previously. At approximately 4:45 P.M. the officers entered the illuminated building and walked to a second floor landing where they were approached by codefendant Glen Rock. At that point, one of the officers asked Rock if he "had anything." Rock replied that he "didn't have anything on him," but that he could supply them with "good rocks,"—referring to "crack"—by going to get the person who had some. The officers followed him down the staircase and waited on a landing while he momentarily left the building. Upon his return, Rock was accompanied by appellant Pedro Luis and codefendant Stephen Wood. Standing together with Luis, Rock, and Wood, the officers observed Luis place two small vials of crack into Rock's open hand. Luis then ran past the undercover officers and up a flight of steps to the second floor landing. The officers testified that they observed him there watching Rock hand the two vials of crack he had received from Luis to one of the officers in exchange for $20 cash in prerecorded buy money. Rock then passed the $20 to Wood.

The officers left the building, proceeded to their undercover vehicle, and notified a police backup team by radio that they had completed a narcotics purchase. They pro-

vided a description of the three defendants, depicting Luis as follows: "J.D. [John Doe] Mustache, male Hispanic, five-foot-eight [inches], slim, denim jacket, tan pants and work boots." Approximately ten minutes later at about 5 P.M. the backup team arrived at the scene and arrested Rock and Wood, who had been observed crossing 48th Street as they walked north on 8th Avenue away from the building. The arresting officers then returned to 302 West 46th Street and arrested Luis, who was still inside. All three defendants were directed to stand in front of the building while the two undercover officers drove by and identified the three as the same individuals involved a half hour earlier in the "buy and bust" narcotics transaction. The undercover officers were 15 feet from the defendants when they made their identification.

At trial Wood testified and denied any complicity in the sale of narcotics. In his direct examination, he did acknowledge that he had been inside 302 West 46th Street and had seen "the two womens [sic]" together with Rock and Luis. He also testified that he was trying to buy crack, but was not selling it. Rock offered no evidence. The only evidence offered by Luis was a stipulation that he had been arrested on January 6, 1987 inside a room at 302 West 46th Street and that he and the room's other occupants had been searched but were not in possession of any narcotics or prerecorded currency.

## DEFENSE THEORY AND TRIAL COURT'S CHARGE

The defense theory was that at the time of Luis' arrest he was in the apartment of a building frequented by drug users and that he had no drugs or prerecorded buy money in his possession. Appellant further claimed that the principal undercover officer's identification of him at trial should not be credited because she had viewed a picture taken of him at the time of his arrest. Defense counsel therefore requested that the trial court include in its charge that the "identification of the defendant as the perpetrator" has to be proved by the government beyond a reasonable doubt.

With respect to the identification of the defendants as participants, Judge Broderick explicitly directed the jury to consider the credibility and reliability of the identification witnesses:

Now, this first element implicates who the defendant is. The government must establish that the defendant that you have under consideration—remembering that you are going to consider each defendant individually—the defendant that you have under consideration is the defendant who either possessed this substance with intent to distribute it or distributed the substance. This is a matter of identification and you will predicate the question of whether or not the government has established the activities of the defendant you have under consideration on all of the evidence that has come before you in the case.

Everything that I had to say earlier about the believability and the reliability of witnesses is something which you will want to consider in determining whether the government has established beyond a reasonable doubt that the defendant that you have under consideration is a person who either distributed the substance or possessed the substance with intent to distribute.

Before concluding his charge, the trial judge asked counsel whether they were satisfied with the charge as given. Luis' counsel excepted to the above instruction, claiming that it was unclear whether the instructions concerning identity applied equally to the conspiracy charges in count one and the substantive distribution charges in count two of the indictment. Defense counsel therefore asked the trial judge to remind the jury in more forceful terms that it was part of the government's burden to establish identification.

Judge Broderick declined to give the precise instruction that defense counsel requested, believing that he had covered the issue adequately. But the trial judge did instruct the jury further as follows

I have discussed both Counts 1 and 2. In count 1, I discussed as the third element that the defendant under considera-

tion intentionally and knowingly became a member of the conspiracy and then in the first element of Count 2 the defendant distributed or possessed a substance with intent to distribute. . . .

Now, with respect to each one of those elements it is essential that the government establish that the defendant you have under consideration is the one who was involved. The burden is on the government to establish the identity of that defendant and when the word "defendant" is used here, the defendant in Count I became a member of the conspiracy, the government must establish that the defendant in this court that you have under consideration in considering that third element is the person who participated, the identity of that defendant must be established and the identity of the defendant must be established with respect to each of these counts. That identity for all practical purposes is the third element in Count I and it is the first element in Count 2. . . .

So you must find beyond a reasonable doubt that the government established that the person who committed these crimes, if the government does establish that, is the same person who is the defendant that you have under consideration.

Let me put that another way. The government has the burden in this case for all purposes. The defendants have no burden and, hence, the government has the burden of establishing that the defendants who are charged are the same persons whom the testimony has concerned.

With the facts and charge in mind, we turn to the law.

## DISCUSSION

Fed.R.Crim.P. 30 permits any party to "file written requests that the court instruct the jury on the law as set forth in the requests." The Rule does not require the trial court to give those instructions, but leaves that decision to the trial judge's discretion. Over 30 years ago we said that "[a] criminal defendant is entitled to have

instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be." *United States v. O'Connor*, 237 F.2d 466, 474 n. 8 (2d Cir.1956). This ruling has been applied in a pragmatic fashion. In those cases where it appears that the trial court's instructions are only general in form—simply a "boiler-plate" charge, one not adequate to inform a jury of the theory of the defense—we have reversed and ordered a new trial. *See, e.g., United States v. Durham*, 825 F.2d 716, 718–19 (2d Cir.1987) (defense theory was that defendants were committing a "scam" and had no intent to commit an arson); *United States v. Pedroza*, 750 F.2d 187, 204–05 (2d Cir.1984) (defendants convicted of kidnapping entitled to an instruction regarding their belief that victim was voluntarily turned over by the father and that therefore they did not act knowingly and intentionally); *United States v. Fernandez*, 456 F.2d 638, 644 (2d Cir.1972) (Rule 30 violated when an identification instruction was refused and defense counsel not allowed to object to instruction given outside the presence of the jury).

By the same token, when the judge's charge fairly and accurately encompasses the theory of the defense, we have affirmed a judgment of conviction. *See, e.g., United States v. Dyman*, 739 F.2d 762, 772 (2d Cir.1984) (trial court adequately explained defense theory of the case to the jury), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985); *United States v. Montelbano*, 605 F.2d 56, 59 (2d Cir. 1979) (giving of an eyewitness identification cautionary charge is not mandatory); *United States v. Marchand*, 564 F.2d 983, 997 (2d Cir.1977) (same), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *United States v. Gentile*, 530 F.2d 461, 469 (2d Cir.) (failure to give instruction on the fallibility of eyewitness identification when requested does not constitute plain error requiring reversal), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed. 2d 388 (1976); *United States v. Barash*, 412 F.2d 26, 33–34 (2d Cir.) (summary fairly and accurately presented defense theory to

jury), *cert. denied,* 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969).

Some circuits have embraced the use of a specific eyewitness charge in order to ameliorate the concerns expressed in *Simmons v. United States,* 390 U.S. 377, 383–84, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), and *United States v. Wade,* 388 U.S. 218, 228–36, 87 S.Ct. 1926, 1933–37, 18 L.Ed.2d 1149 (1967), relating to the dangers inherent in eyewitness testimony that may lead to misidentification. *See, e.g., United States v. Hodges,* 515 F.2d 650, 652–53 (7th Cir. 1975); *United States v. Holley,* 502 F.2d 273, 275 (4th Cir.1974); *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972). Other circuits, including this Circuit, have left the matter to the trial court to be determined in the exercise of its discretion. *United States v. Thoma,* 713 F.2d 604, 607–08 (10th Cir.1983) (focus on the facts of the case to determine whether the required instruction was necessary to fairly present the issue to the jury), *cert. denied,* 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 183 (1984); *United States v. Masterson,* 529 F.2d 30, 32 (9th Cir.) (giving eyewitness instruction within trial court's discretion), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976); *United States v. Evans,* 484 F.2d 1178, 1188 (2d Cir.1973) (where careful instructions to the jury follow full opportunity to develop identification testimony, no error in refusing to give additional identification charge).

■ We believe this flexible approach remains the better course because it avoids imposing rigid requirements on trial courts under the threat that failure to give the requested charge will later be grounds for automatic reversal. In addition, such compulsion would mandate that the special identification charge be given in every case where identification is implicated—as it so often is—even though the *Neil v. Biggers* factors (discussed below) persuasively indicate the strong reliability of defendant's identification as a participant in the crime charged. *See Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). Finally, because the trial judge is in the best position to evaluate whether this charge is needed in the case before it, adopting a rigid requirement cuts back on the trial court's discretion in the conduct of a trial without any assurance that the fair administration of justice is thereby enhanced. Leaving the jury charge to the trial court's discretion means that an appellate court is called upon to decide only whether the failure to give a special eyewitness identification charge under the circumstances of a given case constitutes such an abuse of the trial court's discretion as to be reversible error. *See United States v. Fernandez,* 456 F.2d at 644 (2d Cir.1972).

■ We turn to consider the present circumstances. For several reasons we conclude that the jury had the defense theory of misidentification fairly before it. First, as the earlier discussion demonstrates, though Judge Broderick did not give the eyewitness identification charge that defense counsel requested *in haec verba,* he did give it in substance in the main charge and more specifically in the additional charge. The district court stated to the jury that "with respect to each one of those elements [of each crime charged] it is essential that the government establish the defendant you have under consideration is one who was involved. The burden is on the government to establish the identity of that defendant...." This refrain was repeated more than once, with the district court concluding, "The defendants have no burden and, hence, the government has the burden of establishing that the defendants who are charged are the same persons whom the testimony has concerned."

Second, the proof of eyewitness identification was particularly reliable in this case. The Supreme Court set forth the factors to be considered in assessing that reliability in *Neil v. Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382. The five factors are the (1) opportunity of witness to view the suspect at the time of the crime, (2) witness' degree of attention, (3) witness' accuracy of prior description, (4) witness' level of identification certainty, and (5) length of time between crime and courtroom confrontation. *Id.* In the instant case there were two

especially trained police officers whose job it was on this occasion to observe and obtain good descriptions of those suspected of selling "crack." These officers viewed appellant Luis for several minutes inside a building in an illuminated hallway, gave an accurate description of him to the arresting team and within a half hour verified that the right person had been apprehended. One of the officers made notes containing a good description of the appellant before his arrest. These circumstances provide strong indicia that the identification of appellant Luis as a participant in the crime for which he was charged was reliable.

Viewing the district court's charge in its entirety, *see Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), it is plain that the jury's attention was carefully focused on the defendant Luis' theory that the government's proof lacked reliable eyewitness identification. For these reasons, the judgment of conviction is affirmed.

Judgment affirmed.