BARRINGTON D. PARKER, Circuit Judge, joined by PETER W. HALL, Circuit Judge,
concurring in the denial of rehearing en banc.
I concur fully in the panel’s decision and write separately to emphasize why the *80 panel’s decision was correct and the case does not present a matter of exceptional importance warranting en banc review.
Judge Raggi[1] accuses the panel of committing misdeeds in several forms through its decision. First, we affirmed a grant of habeas relief in circumstances she finds objectionable. Next, we accused the New York Court of Appeals of unreasonably applying the independent source rule established by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We are also said to have failed to apply Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and finally, we are alleged to have referenced social science materials outside the state court record, in contravention of Cullen v. Pinholster, — U.S.-, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).
Under Federal Rule of Appellate Procedure 35(a)(2), en banc consideration is appropriate only for matters of exceptional importance. This case entirely fails to meet that very demanding requirement. On the contrary, this case is as sui generis as we are likely to see. It breaks no new AEDPA ground. It delivers to Young, who will remain incarcerated on other charges, a victory in name alone: a retrial after approximately 19 years of incarceration. It affects no pending cases; nor does it affect the disposition of any case any of us is likely to see in the future. It leaves the law of identification testimony unaltered. In other words, it raises no issues having any systemic consequences for the development of the law and the administration of justice in this Circuit, which is what en banc review should be about. Recently, in Watson v. Geren, 587 F.3d 156, 158 (2d Cir.2009) (per curiam), we denied rehearing en banc because the case involved a “narrow holding” on an issue that “arises so infrequently” that en banc review was not “justifiable.” We noted that “[e]n banc review should be limited generally to only those cases that raise issues of important systemic consequences for the development of the law and the administration of justice.” Id. at 160. This case is an especially poor candidate for en banc review because, as we point out below, the arguments Judge Raggi makes on the Wade issue, the major substantive issue in this case, are her own personal positions. The Appellant abandoned the Wade issue and never contested it on appeal.
While this case is decidedly unexceptional for Rule 35 purposes, it does expose differences among us over the proper role of federal habeas review post-AEDPA. At one end of the spectrum, there are respected jurists who believe that habeas is essentially an artifact that should be limited almost to the point of nonexistence and might not even be available in cases of actual innocence. See In re Troy Anthony Davis, — U.S.-, 130 S.Ct. 1, 2-4, 174 L.Ed.2d 614 (2009) (dissent). There are others, such as I, who believe that habeas review is an essential component of federalism; that it is not discretionary; and that it is in fact required of us by the Constitution and by the oath we take to defend it.
I turn first to the criticism of our citations to social science research regarding eyewitness identifications. I take up the issue first because our citation to social science literature, while somewhat unusual, was, in the panel’s view, an important service to the bench and bar.
As we pointed out in the panel opinion, eyewitness identification testimony is typically reliable and is, and should be, routinely accepted by juries. As we resolved *81 this case, we all knew, however, that problems existed surrounding eyewitness testimony, and indeed the record illustrated them in bold relief. We also knew that mistaken eyewitness identifications were the leading source of wrongful convictions and that this problem was garnering growing attention around the country. Just a few months ago, in State v. Guilbert, 306 Conn. 218, 234-37 (2012), for example, the Connecticut Supreme Court held that experts may testify about the reliability of eyewitness identifications due to the “near perfect scientific consensus” and “broad based judicial recognition” that “eyewitness identifications are potentially unreliable in a variety of ways unknown to the average juror,” as evidenced by scientific research on the topic.[2] Furthermore, the record — principally an outstanding amicus brief written by Paul Weiss and the Innocence Project[3] — directed us toward a robust and growing body of high-quality scientific studies addressing problems surrounding eyewitness identifications. The scientific studies indicated that certain circumstances surrounding a crime — such as the perpetrator’s wearing of a disguise, the presence of a weapon, the stress of the situation, the.cross-racial nature of the crime, the passage of time between observation and identification, and the witness’s exposure to the defendant through multiple identification procedures' — may impair the ability of a witness to accurately process what she observed. Many of these factors are counterintuitive and therefore cannot be deduced by the application of the “common sense” that juries are customarily instructed to employ.
. We concluded that it was a good idea to make trial judges aware of the existence of this information, in effect, as additional tools to help them with their work. I wrestled with how best to do this, as much of this information is contained in technical journals that are not especially easy to access. If you are not in the specialized field, you would be unlikely to know the journals even exist. We ultimately concluded that referencing the studies in an opinion was the best approach. That way, they could quickly and easily be accessed by law clerks and CJA attorneys, for example.
The opinion thus aims to point the bench and bar to the existence of the studies and to go no further. The opinion is explicit that our conclusion that the in-court identification in question lacked an independent source was not “compelled or controlled” by the literature we cited. Young v. Conway, 698 F.3d 69, 79 n. 8 (2d .Cir,2012). The studies reinforced the conclusion we reached. Moreover, nothing in the opinion mandates district court judges to consider, *82 let alone adopt or rely on any of the social science research we cited. They are free to draw on or reject any of the information “to the extent they deem it helpful.” Id. at 80.
For more than 25 years, our court has acknowledged social science’s findings regarding the problems associated with eyewitness identification testimony. In United States v. Luis, for example, we endorsed a “flexible approach” to trial judges’ use of “a specific eyewitness charge in order to ameliorate the concerns expressed in ... [United States v. Wade ] relating to the dangers inherent in eyewitness testimony that may lead to misidentification.” 835 F.2d 37, 41 (2d Cir.1987). In United States v. Serna, 799 F.2d 842, 850 (2d Cir.1986), we noted our “full[] aware[ness] of the dangers of testimony based purely on eyewitness identification,” dangers on which we have “often commented.” In United States v. Veal, we affirmed the district court’s exclusion of expert testimony on eyewitness identification in favor of “a very detailed instruction to the jury regarding the evaluation of eyewitness identification evidence,” observing that district courts “may properly address the dangers of unreliable eyewitness identification testimony by giving a jury charge appropriate to the circumstances of the case.” 182 F.3d 902, No. 98-1539, 1999 WL 446783, at *1 (2d Cir. June 16, 1999) (citing Luis, 835 F.2d at 41). The jury charge referred generically to findings by social scientists. Id. Thirty years ago, in Kampshoff v. Smith, 698 F.2d 581, 585 & n. 4, 586 (2d Cir.1983), we referred to psychology studies to inform our evaluation of eyewitness identifications. Thus, although Judge Raggi articulates a strong preference not to refer to social science information in an opinion, our discussion of these studies was consistent with the law of this Circuit.
As we merely highlighted the existence of these studies, our reference to the studies did not violate Pinholster, 131 S.Ct. 1388, which precludes a federal habeas court’s “review” of material not in the state court record. Judge Raggi contends that “however much the panel may disclaim its social science discussion as dictum ... the fact remains that it ‘review[ed]’ materials not before the state courts.... This is impermissible.... ” Judge Raggi’s position is, therefore, that Pinholster[1] s definition of “review” is so broad that it prohibits judges from so much as looking at materials if they contain anything outside of the state court record, regardless of whether the materials control a court’s conclusions. Not only does this interpretation run contrary to the case law of this Circuit, such a position would require judges to know if the information contained in the briefs is within the state court record, before they could read them. We doubt very much the Supreme Court intended this result.
A more grounded and well-accepted understanding of Pinholster is that it prohibits us from relying on evidence beyond the state court record to reach our result. See Pinholster, 131 S.Ct. at 1398-99 (holding that the Ninth Circuit could not rely on evidence of defendant’s mental illness that was only adduced at federal district court’s evidentiary hearing and not presented during state court proceedings); see also Lewis v. Thaler, 701 F.3d 783, 791 (5th Cir. 2012) (holding that affidavit of doctor regarding defendant’s IQ score that was admitted only to the federal district court could not be relied on by Fifth Circuit to grant § 2254 relief); Ridgeway v. Zon, 424 Fed.Appx. 58, 59-60 (2d Cir.2011) (noting that evidence of trial counsel’s ineffectiveness that was presented only to the federal district court could not be relied on by Second Circuit in granting § 2254 relief). *83 We agree entirely with, and were faithful to, these interpretations of Pinholster. Social science research of the type we discuss merely reinforced our conclusion, which would have been the same even absent these citations, instructive as they were. While Judge Raggi claims our disavowal of reliance on the social science literature is “unconvincing,” she then goes on to acknowledge that the research could not have compelled our decision as she states that the “cited extrinsic materials do not speak to the independent-source question” — which; after all, is the central issue in this case. As we did not rely, and by Judge Raggi’s declaration, could not have relied on the social science research to reach our result, but merely referred to it to assist the bench and bar, we did not violate Pinholster.
The next issue Judge Raggi raises in support of en banc review is our decision on the merits upholding the district court’s conclusion that the New York courts unreasonably applied Wade. See 28 U.S.C. § 2254(d). The most important thing to realize when evaluating Judge Raggi’s arguments is that they are not those of counsel for respondent, the Monroe County District Attorney’s office. The District Attorney’s brief did not contest the district court’s finding that there was no independent source for the identification. This omission by the party directly affected speaks volumes. The fair inference is that the District Attorney’s office concluded that the district court was correct on the merits; otherwise the issue would have been front and center in its brief to us. Consequently, where we are left on the dispositive issue in the case is that Judge Raggi not only disagrees with the panel, she also disagrees with both parties to the appeal. She then proceeds to make arguments on behalf of the District Attorney’s office that, for whatever reason, it elected not to make for itself.
Judge Raggi’s dissent advances two basic arguments. The first is not especially important. The New York Court of -Appeals concluded that it could not disturb the holding of the Appellate Division that an independent source existed because it was an issue of fact beyond its review. See People v. Young, 7 N.Y.3d 40, 44, 817 N.Y.S.2d 576, 850 N.E.2d 623 (2006) (describing the Appellate Division’s finding with respect to the independent source issue as “an issue of fact” and holding that therefore the court “may not disturb” the Appellate Division’s finding). It is pretty clear that the NYCA misspoke because Wade independent source inquiries are a mixed question of law and fact. See Wade, 388 U.S. at 241-42, 87 S.Ct, 1926; see also Tomlin v. Myers, 30 F.3d 1235, 1241 n. 12 (9th Cir.1994) (“[w]hether [the] identification was derived from an independent source is a mixed question of -law and fact”). Judge Raggi, however, disputes whether the NYCA really intended to say that independent source findings are issues of fact that they could not review, relying on the fact that in a completely separate case, People v. Jackson, 98 N.Y.2d 555, 559, 750 N.Y.S.2d 561, 780 N.E.2d 162 (2002), the NYCA correctly stated that such issues are a mixed question of law and fact. While Judge Raggi chooses not to take the NYCA at its word in this case, we did. But no matter whether Judge Raggi is correct or we are — and I maintain that we are — opr decision did not turn on this error. Thus, -the disagreement between Judge Raggi and the panel on this point is not a matter of exceptional importance warranting en banc review.
What our opinion does turn on, which Judge Raggi takes up in her second argument, is our finding that a closely-divided (3-2) panel of the New York Appellate Division unreasonably applied Wade in deciding that Mrs. Sykes’s identification of *84 Mr. Young was independent of any earlier tainted identification procedure. According to Judge Raggi, the panel’s conclusion that the state courts unreasonably applied Wade is incorrect, violates notions of comity, and runs contrary to the deference to state courts required by decisions such as Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). It bears repeating that this is not the position of the Appellant, which elected not to contest the district court’s conclusion on this issue.
The panel’s opinion goes through the Wade factors[4] in detail and explains why we concluded, as had the district court, that no independent source existed for Mrs. Sykes’s identification, eight years after the fact, of an individual she could not really see in the first place. The support in the record for this conclusion was overwhelming: Recall that during the commission of the crime, the perpetrator’s entire body was covered by a blanket and his face was completely covered by a scarf, with only the exception of his eyes, about which Mrs. Sykes said there was nothing distinguishing or remarkable. Mrs. Sykes observed the perpetrator’s eyes during a period of five to seven minutes, in a highly stressful situation.
Mrs. Sykes’s opportunity to view the perpetrator was so limited that after the crime she could not assist police in preparing a sketch of the perpetrator. When initially shown a photograph array, which included Mr. Young, neither Mrs. nor Mr. Sykes selected him. It was only in the unconstitutional police lineup, in which Mr. Young was the only person whose photo was also included in the earlier array, that Mrs. Sykes — but not Mr. Sykes — selected Mr. Young. Not only did Mrs. Sykes view Mr. Young in the lineup, she also observed Mr. Young as the defendant throughout the first trial.
On this record, the district court found that Mrs. Sykes’s identification of Petitioner Young, eight years later, had no independent source, but rather it “stemmed from the suggestive courtroom setting in which Petitioner was obviously the accused [or] [a]t best ... relied on the suppressed, illegal pre-trial identification where Mrs. Sykes saw Petitioner and heard his voice.” Young v. Conway, 761 F.Supp.2d 59, 76 (W.D.N.Y.2011). The district court concluded that in “[Reviewing the Wade factors, all of them are on Petitioner’s side of the scale, and none of them are on the government’s.” Id. at 75. Further, the district court found, and we agree, that without the identification, the prosecution had no case. The corroborating evidence Judge Raggi. references — Mr. Young’s criminal record, testimony from a questionable witness regarding the stolen items being seen in a house in which Mr. Young once.stayed, which according to the testimony, was visited by up to thirty people each night who would “be in and out”— was clearly insufficient for conviction beyond a reasonable doubt for robbery. App. at 272-73.
In the face of such facts and findings, Judge Raggi suggests that the New York courts did not unreasonably err, but may *85 have merely “assigned more weight” to some Wade factors “than the panel would have.” But this conclusion is belied by the record. After all, if, as here, every single Wade factor turned against a finding of an independent source, then it makes -no difference how they are weighted.
Bearing the standard for the Appellant, Judge Raggi, relying on Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), which precludes federal habeas relief so long as “fairmind-ed jurists could disagree on the correctness of the state court’s decision,” argues that because several state court judges ruled that there was an independent source for the identification, there can be said to be ‘disagreement by fairminded jurists’ and habeas relief is therefore precluded. If this is correct, then habeas relief would never be available since the writ, by its nature, requires federal courts to, in the appropriate case, disagree with state judges on matters of federal law. Judge Raggi asserts that it is “no small matter for a panel of this court to charge [that] New York’s ... court[s]” did not properly apply a particular precedent. We agree, and we did not do so lightly.
As a final matter allegedly meriting en banc review, Judge Raggi argues that our decision violates Stone v. Powell, which established that a state prisoner may not be granted federal habeas relief on a Fourth Amendment claim if he has had a full and fair opportunity to litigate, that claim in state court. 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In its opinion, however, the Supreme Court made clear that Stone’s rule is not jurisdictional. See Stone, 428 U.S. 465, 494 n. 37, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (“[W]e hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied [full and fair review in' state court]. Our decision does not mean that the federal court lacks jurisdiction over such a claim.... ” (emphasis added)). It is well-settled that non-jurisdictional arguments and defenses may be waived. See, e.g., Gonzalez v. Thaler, — U.S. -, 132 S.Ct. 641, 648, 651, 181 L.Ed.2d 619 (2012) (holding, in the federal habeas context, that because a rule was non-jurisdictional and the state had failed to object based on the rule before the district court, the court of appeals was not barred from adjudicating the claim fully on its merits); Arbaugh v. Y & H Corp., 546 U.S. 500, 504, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (holding that employer’s numerosity of employees requirement under Title VII was fion-jurisdictional and therefore waived if objection not timely raised). In this case, the Appellant failed to raise the Stone issue in the district court and asserted it for the first time on appeal. We held that because Stone was not raised below, it was waived.[5] We routinely apply waiver rules to habeas petitioners, and we saw no reason to make an exception for the state here. See, e.g., Arroyo v. Senkowski, 36 Fed.Appx. 660, 663 (2d Cir.2002) (holding that state court had not complied with the fourth requirement of Waller test for *86 courtroom closure, but because habeas petitioner had failed to raise that objection to the district court he “forfeited [the] issue on appeal”). Should a panel encounter the issue in the future, that panel could choose to apply Stone sua sponte, as nothing in our opinion forecloses that option.
Judge Raggi takes the position that Stone can never be waived and that we were therefore obligated sua sponte to impose Stone’s bar despite the District Attorney’s failure to raise it. She contends that while Stone is not jurisdictional, “it is categorical” and therefore every petitioner must show the denial of a full and fair opportunity to litigate his claim in state court as a “prerequisite” to federal review. If demonstrating that the denial of a fair opportunity is a requirement for federal review on the merits, however, then by definition, Stone would be jurisdictional. But the Supreme Court has clearly stated that Stone is not jurisdictional; and it has never held that a petitioner must show a denial of a full and fair opportunity in state court as a prerequisite to federal review of his Fourth Amendment claims.
Although the law is divergent throughout the circuits, a fair reading is that the weight of authority is that courts may, but are not required, to raise Stone sua sponte. See Tart v. Massachusetts, 949 F.2d 490, 497 n. 6 (1st Cir.1991) (deciding the case on other grounds but, noting “the discretionary authority of federal appellate courts to raise the Stone prohibition sua sponte ” (emphasis added)); Davis v. Blackburn, 803 F.2d 1371, 1372-73 (5th Cir.1986) (acknowledging that the court is not “foreclosed from sua sponte applying the principle of Stone v. Powell” but de-dining to require its mandatory imposition); Wallace v. Duckworth, 778 F.2d 1215, 1219 n. 1 (7th Cir.1985) (“Moreover, respondents never raised any Stone v. Powell argument, and since the rule of Stone v. Powell is not a jurisdictional rule, we need not raise the issue sua sponte.” (internal citations omitted)).[6]
Judge Raggi dismisses the authority from the other circuits as dicta, and relies heavily on the Ninth Circuit’s divided panel opinion in Woolery v. Arave, 8 F.3d 1325, 1326 (9th Cir.1993), for support. At the end of the day, what Judge Raggi describes as a “circuit split” comes down to this: Everyone agrees that Stone is not jurisdictional; the First, Fifth and Seventh Circuits think that Stone can be, but need not be raised sua sponte; the Ninth Circuit believes Stone is not waivable. We concluded the defense was waivable and we chose not to raise it sua sponte as we did not think it was our role to do the DA’s job for it. Had a different panel obtained the assignment, they may have chosen to apply Stone sua sponte; and again nothing in our opinion would prevent them from doing so in the future.
Finally, I do not believe it is possible to advance persuasive arguments in support of the proposition that this issue meets the test for exceptionalism under Rule 35. This case is entirely a one off. The chances of any of us ever seeing a Fourth Amendment habeas case in which the government fails to cite Stone v. Powell are far too low to estimate. I cannot figure out why the District Attorney’s office, in its nearly forty-page district court memorandum of law, raised procedural default, exhaustion and various other alleged bars *87 to federal review but failed to mention Stone. Was this deliberate, and, if so, why? Extended speculation is not required because I very seriously doubt that we are likely again to see such an omission. In other words, an issue that has not arisen in the past, that does not affect any case pending in the queue, and that is highly unlikely to recur in the future is not of “exceptional importance” for Rule 35 purposes.
For these reasons, I concur in the denial of rehearing en banc.

. Judge Raggi is joined by Judge Cabranes and Judge Livingston.

. Accord State v. Lawson, 352 Or. 724, 727, 291 P.3d 673 (2012) (instituting new standard for admissibility of eyewitness identification evidence "[i]n light of the scientific research” regarding the fallibility of such identifications); State v. Henderson, 208 NJ. 208, 218-19, 234, 27 A.3d 872 (2011) (revising test for admissibility of eyewitness identification evidence, and also ordering that "enhanced” jury charges be developed to assist jurors in evaluating such evidence, after a review by a Special Master of hundreds of scientific studies revealed a "troubling lack of reliability in eyewitness identifications” and that the "possibility of mistaken identification is real”).

. The Innocence Project is an organization dedicated primarily to providing pro bono legal and related investigative services to indigent prisoners whose actual innocence may be established through post-conviction evidence. It pioneered the post-conviction DNA model that has led to the exoneration of 289 innocent persons to date, the vast majority of whom were originally convicted based, at least in part, on the testimony of eyewitnesses who turned out to be mistaken.

. According to Wade, to determine whether a particular identification can be considered independent of any earlier taint, the following factors are to be considered: (1) the pri- or opportunity to observe the alleged criminal act; (2) the existence of any discrepancy between any post-crime description and the defendant’s actual description; (3) any identification of another person; (4) the identification by picture of the defendant prior to the identification; (5) the failure to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the lineup identification. 388 Ü.S. at 240-41, 87 S.Ct. 1926.

. We have not hesitated in the past to require the state, in the context of a § 2254 habeas proceeding, to bring to the district court's attention a decision of this Court which would have eviscerated the petitioner’s position on appeal. See Stevens v. Miller, 676 F.3d 62, 65 (2d Cir.2012). The failure to do so, we held in Stevens, foreclosed the state's attempts to benefit from the decision on appeal, despite the fact that the decision would have "ensured the State of certain victory." Id. See also Cornell v. Kirkpatrick, 665 F.3d 369, 376-77 (2d Cir.2011) (holding that state's consistent statement to the district court that petitioner had exhausted his particular claim, meant that on appeal, state could not then argue that petitioner had failed to exhaust that claim).’

. The cases Judge Raggi cites from this Circuit are unhelpful as they involved situations where the Stone issue was raised below so there was no question regarding waiver (Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir.2002)) or Stone had just been decided, so there was no opportunity to raise it in the district court (Gates v. Henderson, 568 F.2d 830, 840 (2d Cir.1977)).

. In urging otherwise, Judge Parker submits that nothing more is at stake here than our personal disagreement about the "proper role of federal habeas review post-AEDPA.” Ante at 80. In fact, Judge Parker’s disagreement is not with those of us seeking en banc review, but with the Supreme Court, which has defined the "proper role of habeas review” in Stone v. Powell, Harrington v. Richter, and Cullen v. Pinholster. Appellate courts' failure to adhere to 28 U.S.C. § 2254 as construed by the Supreme Court has triggered reversal or *88 vacatur in at least nineteen recent cases. See Marshall v. Rodgers, — U.S. — —, 133 S.Ct. 1446, 185 L.Ed.2d 540 (2013); Johnson v. Williams, — U.S.-, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013); Ryan v. Gonzales, - U.S. --, 133 S.Ct. 696, 184 L.Ed.2d 528 (2013); Parker v. Matthews, -U.S.-, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); Coleman v. Johnson, — U.S.-, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012); Wetzel v. Lambert, — U.S. -, 132 S.Ct. 1195, 182 L.Ed.2d 35 (2012); Hardy v. Cross, - U.S. -, 132 S.Ct. 490, 181 L.Ed.2d 468 (2011); Bobby v. Dixon, - U.S. -, 132 S.Ct. 26, 181 L.Ed.2d 328 (2011); Cavazos v. Smith, - U.S. -, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011); Bobby v. Mitts, — U.S. -, 131 S.Ct. 1762, 179 L.Ed.2d 819 (2011); Cullen v. Pinholster, -U.S.-, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011); Felkner v. Jackson, - U.S. -, 131 S.Ct. 1305, 179 L.Ed.2d 374 (2011); Premo v. Moore, - U.S. -, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011); Harrington v. Richter, -U.S. -, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010); Berghuis v. Smith, 559 U.S. 314, 130 S.Ct. 1382, 176 L.Ed.2d 249 (2010); Thaler v. Haynes, 559 U.S. 43, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010); Smith v. Spisak, 558 U.S. 139, 130 S.Ct. 676, 175 L.Ed.2d 595 (2010); McDaniel v. Brown, 558 U.S. 120, 130 S.Ct. 665, 175 L.Ed.2d 582 (2010).