13-359(L)
USA v. Reed, et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of June, two thousand fourteen.

PRESENT: DENNIS JACOBS,
         GUIDO CALABRESI,
         ROSEMARY S. POOLER,
                   <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,
         <u>Appellee</u>,

                                    **13-359-cr(L)**
         -v.-                        **13-360(con),**
                                     **13-380(con)**

GREGORY REED, also known as Sharky
JOHN JOHNSON, RONNIE GONZALEZ, also
known as Satan,
         <u>Defendants-Appellants</u>.
- - - - - - - - - - - - - - - - - - - - -X

FOR APPELLEE:            TODD W. BLANCHE, Assistant
                         United States Attorney (<u>with</u>
                         Brent S. Wible, Assistant United
                         States Attorney, <u>on the brief</u>),
                         <u>for</u> Preet Bharara, United States
                         Attorney for the Southern

1

District of New York, New York, New York.

**FOR APPELLANTS:**        JEREMY SCHNEIDER (<u>with</u> Lucas Anderson <u>on the brief</u>), Rothman, Schneider, Soloway & Stern, LLP, New York, New York, <u>for</u> Gregory Reed.

James E. Neuman (<u>with</u> David S. Greenfield <u>on the brief</u>), New York, New York, <u>for</u> John Johnson.

Thomas H. Nooter, Freeman, Nooter & Ginsberg, New York, New York, <u>for</u> Ronnie Gonzalez.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgments of the district court be **AFFIRMED.**

Gregory Reed and John Johnson appeal from judgments of conviction entered on January 17, 2013, and Ronnie Gonzalez appeals from a judgment of conviction entered on January 23, 2013, in the United States District Court for the Southern District of New York (Sullivan, <u>J.</u>). We decide the Sixth Amendment claim raised by Reed in a separate opinion issued simultaneously with this summary order. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

On June 6, 2011, a three-count federal indictment was filed against Reed, Johnson, and Gonzales (collectively, "Defendants"). Count One charged Defendants with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Count Two charged Reed, Johnson, and Gonzalez with attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Count Three charged Reed, Johnson, and Gonzalez with causing the death of Bernardo Garcia through the use of a firearm during and in furtherance of the crimes charged in Counts One and Two, in violation 18 U.S.C. § 924(j). A jury found each defendant guilty on each count.

"Because [Defendants] appeal[] from a judgment of conviction entered after a jury trial, the following facts are drawn from the trial evidence and described in the light most favorable to the government." United States v. Wilson, 709 F.3d 84, 85 (2d Cir. 2013) (per curiam).

On December 1, 2007, Donnell Richardson, a drug dealer with a long and varied criminal history, enlisted Reed and Gonzalez to rob a small ring of drug dealers operating out of the lobby of a residential building in the Bronx (the "Building"). Reed, in turn, recruited Johnson. Richardson wanted to rob the drug dealers of their guns and take over the Building for himself. As payment, it was agreed that Reed, Johnson, and Gonzalez would keep any drugs and money they could grab.

That same day, Gonzalez served as look-out and Richardson waited in his car across the street while Reed and Johnson entered the Building. When one of the dealers, Luis Navarro, ran toward a stairwell, Reed fired into the air. Johnson then shot and killed the other dealer, a teenager named Bernardo Garcia. Reed, Johnson, and Gonzalez immediately fled without taking any drugs, guns, or money. Eventually, Donnell Richardson agreed to cooperate with the Government's investigation and prosecution (but not before he had established his own highly-profitable drug-dealing operation in the Building).

A.   Sufficiency of the Evidence

Reed and Gonzalez challenge the evidentiary sufficiency of their convictions for Hobbs Act robbery. We review sufficiency challenges de novo, "view[ing] the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility, and its assessment of the weight of the evidence." United States v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008) (internal quotation marks, citations, and alterations omitted). A "conviction must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 124 (internal quotation marks omitted, emphasis in original).

The Hobbs Act proscribes (inter alia) robbery, attempted robbery, and conspiracy to commit robbery that "in any way or degree obstructs, delays, or affects" interstate

3

commerce. 18 U.S.C. § 1951(a). "Robbery" is "the unlawful taking or obtaining of personal property from the person . . . , against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . ." 18 U.S.C. § 1951(b)(1). While the jurisdictional (i.e., interstate) element of the Hobbs Act "must be proven beyond a reasonable doubt, just as any other element, we recognize that the effect on interstate commerce need only be slight or subtle." United States v. Needham, 604 F.3d 673, 681 (2d Cir. 2010); see also United States v. Fabian, 312 F.3d 550, 554 (2d Cir. 2002) ("Our precedent requires the government make only a de minimis showing to establish the necessary nexus for Hobbs Act jurisdiction.").

### 1. Intent to Commit Hobbs Act Robbery

Reed and Gonzalez argue that evidence was insufficient evidence to conclude beyond a reasonable doubt that Defendants had conspired to commit or attempted to commit a robbery; they claim that the incident was a "straightforward shooting."[1] Gonzalez Br. 17; see also Reed Br. 40 ("Every objective item of evidence presented at trial, including Navarro's testimony, indicates that this crime was an intentional murder, and not an attempted robbery.").

"Attempt is an inchoate offense, requiring that a defendant have taken a substantial step in furtherance of the intended crime to support conviction." United States v. Davis, 689 F.3d 179, 187 (2d Cir. 2012) (internal quotation marks omitted). The detailed testimony of Richardson sufficiently evidenced Defendants' intent to commit robbery. Richardson testified that he hired Defendants to rob the dealers at the Building so as to scare them off and replace them. As payment, he told Defendants that they would keep whatever money and drugs were recovered. This provided Defendants with substantial pecuniary incentive to assist Richardson: Luis Navarro (the surviving victim) testified that he and his associates sold between $10,000 and $20,000 of crack cocaine and heroin every week. Trial Tr. 1055-59. And for that reason, according to Richardson, "[Defendants]

---

[1] This challenge implicates our jurisdiction under the Hobbs Act as well as Defendants' guilt of the underlying substantive offense.

4

agreed to do the robbery.  They was [sic] getting the money and drugs."  Id. at 527.

Reed asserts that Richardson was "an inherently unreliable witness."  Reed Br. 39.  However, "[a]ssessments of witness credibility and choices between competing inferences lie solely within the province of the jury," United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010), and this Court must view Richardson's testimony in the light most favorable to the verdict.  In that light, the jury was free to credit Richardson's testimony that this was a robbery that did not go as planned.

Reed and Gonzalez claim that, whatever their intent, the evidence was insufficient because the men did not actually make any demands for drugs or money, let alone take any.  Based on Richardson's testimony, the jury could conclude that Reed, Gonzalez, and Johnson each had the requisite specific intent to rob Navarro and Garcia.  By the time Reed and Johnson entered the Building, with Gonzalez on watch and Richardson waiting in the wings, the would-be robbers had already taken a substantial step toward completing that crime.  See United States v. Farhane, 634 F.3d 127, 147 (2d Cir. 2011) ("[A] 'substantial step' must be 'something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime.'" (quoting United States v. Manley, 632 F.2d 978, 987 (2d Cir. 1980)).

## 2.  Hobbs Act Jurisdiction

Reed and Gonzalez argue that the Government failed to prove the jurisdictional element of its Hobbs Act claims beyond a reasonable doubt.

The Government rested federal jurisdiction on the expert testimony of Special Agent Daniel Dyer of the Drug Enforcement Agency that neither cocaine (crack's predecessor compound) nor heroin is produced in the United States.  A reasonable jury would certainly be free to disregard the possibility, raised by Gonzalez on cross-examination, that Navarro or his unnamed suppliers grew their own coca and poppy plants and then went through the arduous process of making cocaine and heroin from them--particularly in light of Dyer's testimony that hundreds of kilograms of coca leaf are required to produce a single kilogram of cocaine.  Cf. United States v. Parkes, 497 F.3d 220, 231 (2d Cir. 2007)

5

(holding that testimony that marijuana was "almost exclusively" imported into the United States and that "very little" marijuana was grown in New York was sufficient to establish interstate nexus) (alteration omitted).  In any event, we have held that expert testimony is unnecessary to establish Hobbs Act jurisdiction because "[t]he importation and interstate transportation of cocaine, as well as the financial size of the cocaine trade, have been routinely and copiously discussed by public officials, candidates for office, and the news media for decades."  United States v. Gomez, 580 F.3d 94, 102 (2d Cir. 2009).  Special Agent Dyer's testimony was therefore sufficient to establish beyond a reasonable doubt that a robbery of crack cocaine or heroin would have at least a de minimis effect on interstate commerce.

## B.    Limitation of Cross-Examination of Richardson

Gonzalez argues that the district court abused its discretion when it proscribed cross-examination into Richardson's "history of taking advantage of minors--particularly, his conviction for the statutory rape of a 14-year-old girl and his sexual conduct with a 16-year-old cousin who had run away from home and was dependent on the witness financially and for shelter." Gonzalez Br. 17-18.

Because "the trial court is accorded broad discretion in controlling the scope and extent of cross-examination[,]" United States v. Caracappa, 614 F.3d 30, 42 (2d Cir. 2010) (internal quotation marks omitted), we disturb such rulings only if "persuaded that the trial judge ruled in an arbitrary and irrational fashion." United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).  In particular, we look to whether "the jury [was] in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility." United States v. Laljie, 184 F.3d 180, 192 (2d Cir. 1999) (internal quotation marks omitted).

In performing the required balancing under Federal Rule of Evidence 403, the district court determined that the jury was likely to be "distract[ed]" by Richardson's sexual abuses, and consequently unable to assess fairly his credibility.  Gonzalez App'x 39.  This was not an arbitrary or irrational finding.  Cf. United States v. Rosa, 11 F.3d 315, 336 (2d Cir. 1993) ("Nor was it an abuse of discretion to exclude evidence of certain types of acts such as rape

6

and burglary as having an insufficient bearing on the witness's credibility.").

Moreover, Richardson testified at great length to a life of violent crime and drug-dealing, including, for example, many drive-by shootings and thefts from his own family.  He also admitted a guilty plea to assaulting his wife, then only seventeen years old and six months pregnant with their child.  In light of this evidence, "the jury [was] in possession of facts sufficient to make a discriminating appraisal of . . . [Richardson's] credibility," and the district court did not abuse its discretion in excluding inquiry into two further examples of his predatory abuse of young girls.[2]  Laljie, 184 F.3d at 192.

### C.    John Johnson's Appeal

#### 1.    Motion to Suppress Identification Testimony

Johnson argues that due process was violated because Richardson's trial identification of him as one of the robbers was tainted by two suggestive pretrial photo arrays.

The Government concedes (as it ultimately did below) that the photo arrays were unduly suggestive.  Nonetheless, after hearing testimony from Richardson, the district court concluded from the totality of the circumstances that Richardson had a sufficient independent basis for making a reliable trial identification of Johnson as the third robber.  Accordingly, Richardson's identification of Johnson was admitted pursuant to the inquiry elaborated in Neil v. Biggers, 409 U.S. 188 (1972).  We review that decision only for clear error.  See United States v. Reilly, 76 F.3d 1271, 1276 (2d Cir. 1996) (explaining that the clear error standard requires affirmance if the district court's findings are "plausible in light of the record viewed in its entirety").

The factors relevant to this Biggers reliability inquiry include (1) the witness's opportunity to view the criminal at the time of the crime, (2) the witness's degree

---

[2]    Much less was the decision harmful, as the evidence was "repetitive [and] only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at confrontation, and (5) the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199-200 (1972). Considering these factors in light of the record, we cannot say that the district court's analysis was clearly erroneous. Although Richardson had not met Johnson prior to the day of the robbery, Richardson had ample opportunity and incentive to observe Johnson that day, both before and after the crime. Richardson also saw Johnson three more times before the suggestive photo arrays, and at one of those meetings the men explicitly referenced Johnson's participation in the robbery. The district court reasonably found that the number and quality of these interactions (i.e., in good light and at close range), as well as the level of attention paid by Richardson during them, outweighed the length of time that passed between the crime and the suggestive confrontations. Cf. United States v. Jacobowitz, 877 F.2d 162, 168 (2d Cir. 1989) (long interval between witness's encounter with defendant and the identification procedure outweighed by other factors). Finally, although Richardson's initial description of Johnson was vague, it was not inaccurate; and his identification of Johnson as the third robber--from the first photo array through the conclusion of trial--was prompt and steadfast.

The district court did not clearly err in concluding that Richardson had an independent basis for making a reliable trial identification of Johnson. Therefore, the district court properly submitted this evidence to the jury, notwithstanding the Government's use of unduly suggestive photo arrays.

### 2. Objection to Identification Instruction

At a pretrial hearing on jury instructions, Johnson requested an instruction that "the use of the single-photo displays was improperly suggestive" (as the court had already found) and then explained the Biggers factors. See Johnson Br. 43. Ultimately, the district court issued a revised charge that closely tracked Johnson's suggested Biggers language without telling the jury of the prior ruling on the photo arrays.

Johnson raised no objection to the revised charge, and we accordingly review only for plain error. See United

8

States v. Crowley, 318 F.3d 401, 412-13 (2d Cir. 2003) ("A party who has requested an instruction that has not been given is not relieved of the requirement that he state distinctly his objection to the instruction that is given.") (citation, internal quotation marks, and alteration omitted).  "As a general rule, we reserve a finding of plainness to situations where a trial court's ruling contravenes clearly established precedent."  United States v. Brown, 352 F.3d 654, 665 n.10 (2d Cir. 2003).

As Johnson acknowledges, the Second Circuit has "declined to require particular language" for eyewitness identification cautionary charges.  Johnson Br. 39-40 (citing United States v. Evans, 484 F.2d 1178, 1188 (2d Cir. 1973)).  Indeed, an eyewitness identification charge materially indistinguishable from the one disputed here was found to have "provided substantial guidance on how to evaluate eyewitness identification testimony."  United States v. Kwong, 69 F.3d 663, 666 (2d Cir. 1995).

When, as here, "the judge's charge fairly and accurately encompasses the theory of the defense, we have affirmed a judgment of conviction."  United States v. Luis, 835 F.2d 37, 40 (2d Cir. 1987) (citations omitted).  The district court's instruction gave an accurate assessment of the law and fairly apprised the jury of their sensitive task of assessing Richardson's credibility and the reliability of his identification of Johnson.  Accordingly, we find no plain error.

For the foregoing reasons, and finding no merit in the other arguments raised by Defendants, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK